

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1258-12

### THE STATE OF TEXAS

### v.

### MARCELINO GUERRERO, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### HIDALGO  COUNTY

COCHRAN,  J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and ALCALA, JJ., joined.  MEYERS, J., did not participate.

### O P I N I O N

Appellee, an undocumented alien seeking to remain eligible for "cancellation of

removal" from the United States,[1] filed a motion to vacate his 1998 deferred-adjudication

---

[1] *See* 8 U.S.C. § 1229b(b)(1) (allowing Attorney General to cancel removal of an alien who is inadmissible or deportable from the United States if the alien (1) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (2) has been a person of good moral character during such period; (3) has not been convicted of any law or regulation of a State relating to a controlled substance; and (4) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child).

misdemeanor judgment for possession of less than two ounces of marijuana. The motion alleged that appellee's guilty plea had been involuntary because it was made without an attorney giving appellee advice regarding deportation. After hearing from appellee's current counsel, the trial judge granted the motion.

The court of appeals affirmed, pointing to "evidence" that appellee did not knowingly and voluntarily waive his right to counsel.[2] We granted the State Prosecuting Attorney's (SPA's) petition to answer two questions: First, could counsel's statements be considered "evidence"? Second, was appellee's 1998 waiver of counsel constitutionally invalid because he was not informed of the possible deportation consequences of his plea?[3] After a brief note on the nature of the pleading filed here, we answer both questions no. We therefore reverse the court of appeals and reinstate the trial court's original judgment.

I.

Appellee entered the United States illegally in 1992, as a twelve-year-old child, by wading across the Rio Grande River. When he was a junior in high school, he was caught

---

[2] *State v. Guerrero*, No. 13–11–00406–CR, 2012 WL 3525647, *3 (Tex. App.—Corpus Christi Aug. 16, 2012) (not designated for publication).

[3] We granted the State Prosecuting Attorney's two questions for review:
1.  Did the Court of Appeals err by disregarding applicable habeas law when it considered habeas counsel's unsworn statements, made without any first-hand knowledge of the relevant guilty-plea proceeding, as evidence upon which to grant relief?
2.  Did the Court of Appeals err to hold that Appellee's waiver of counsel was not knowing and voluntary because he was not admonished about deportation consequences before he pled guilty?

with 1.9 grams of marijuana,[4] and charged with possession of less than two ounces of marijuana. He waived his right to counsel and pled guilty to that charge before Judge Homero Garza. He received deferred-adjudication community supervision for 180 days, which he successfully completed in March, 2000.

On June 10, 2009, appellee was stopped by the La Feria Police Department for traffic violations. Appellee "stated that he was a native and citizen of Mexico and admitted he did not have Immigration documents, which would allow him to enter or remain in the United States." Because he was an undocumented alien, the federal government initiated deportation proceedings.

Two years later, appellee filed a motion to vacate the 1998 misdemeanor judgment on the ground that he was neither represented by counsel who would have advised him of the consequences of his plea as a non-U.S. citizen, nor admonished by the trial judge of those consequences. At the hearing on appellee's motion, his counsel stated that appellee is now facing deportation because of his plea. The trial judge recalled the procedures that were followed in his own court (not the court in which appellee pled guilty) during the 1998 time period: "we would line up up to 100 defendants and . . . would sign them up without an attorney."[5] The State pointed to the signed waiver of counsel, and appellee's counsel

---

[4] This is the equivalent of about three or four marijuana cigarettes. *See Moncrieffe v. Holder*, 133 S.Ct. 1678,1683 (2013) (1.3 grams "is the equivalent of about two or three marijuana cigarettes").

[5] Hidalgo County Judge Federico (Fred) Garza Jr. presided over the "motion to vacate" proceedings. Judge Homero Garza, who had taken appellee's plea, was then presiding over the

responded, "Yes, your Honor, but they didn't even bother to ask him about his immigration status and like I said, Mr. Guerrero is here if the Court would like to hear from him on this matter." The trial judge stated, "No, that's all right," and granted appellee's motion.

A second hearing was held on the State's motion to reconsider in which the State pointed out that, although appellee's pleading was titled "Motion to Vacate Judgment," it was actually a collateral attack on the 1998 judgment and did not comply with the requirements of Article 11.072. The State then responded to the merits of the application, noting: (1) appellee validly waived his right to counsel; (2) the offense to which appellee pled was not a deportable offense; (3) appellee's pending deportation is based on his illegal entry, not his plea; and (4) appellee was not entitled to admonishments from the court since his plea was to a misdemeanor offense.

Appellee's counsel responded,

> Judge, I've been advised by an immigration attorney personally the immigration attorney representing Mr. Guerrero on his immigration case that any case involving a controlled substance . . . can in fact be a deportable offense and as a result of Mr. Guerrero's plea on this case and his status in the country at this time, he is pending a hearing in immigration court and this case will in fact affect him in some manner over there.
>
> What we're advising the Court, though, that Mr. Guerrero is here to testify if the Court wants to hear testimony. The main thing in this case, this young man, he was not appointed counsel when he should have been. They should have asked him if he was a U.S. citizen so if the Court had known he was not a U.S. citizen the Court would have appointed someone to admonish him as to what the consequence was of his plea and in fact the Court did not do so.

---

probate court in Hidalgo County.

The trial judge adopted appellee's proposed factual findings[6] and conclusions, and signed an order vacating the 1998 judgment. There were six conclusions of law, including:

3.      Defendant should have been provided counsel and admonished as to the consequences of his plea on September 10, 1998 in order to allow Defendant to make a decision based on proper legal advice and court admonishments.

6.      The facts of this case establish without a doubt that Defendant, Marcelino Guerrero, was never properly admonished about the consequences of his plea and clearly establishes harm to Defendant resulting in his possible deportation and exclusion from this country where he has resided for eighteen (18) years.

The State appealed, but the court of appeals upheld the trial judge, finding that he did not err in considering counsel's statements as evidence because the State did not object to them[7] and holding that those statements supported the trial judge's conclusion that appellee did not knowingly and voluntarily waive his right to counsel.[8]

II.

Article 11.072 is "the exclusive means by which the district courts may exercise their

---

[6] Factual Finding Four read:
On or about September 10, 1998, Defendant, Marcelino Guerrero, appeared in Hidalgo County Court at Law Number 3 for arraignment and was advised by the prosecutor from Hidalgo County District Attorney's Office that if he entered a plea of guilty without counsel, the prosecutor would recommend a sentence of "deferred adjudication" without a finding of guilt. Defendant was never admonished about his citizenship status and, not knowing about the consequences of his plea on his immigration status, Defendant agreed to plead guilty without having been provided legal counsel.

[7] *Guerrero*, 2012 WL 3525647, at *2 ("[T]o the extent that the State now complains on appeal that the habeas court could not rely on defense counsel's statements as evidence, we conclude that the State has not preserved that issue for review.").

[8] *Id.* at *3-4.

original habeas jurisdiction under Article V, Section 8, of the Texas Constitution in cases involving an individual who is either serving a term of community supervision or who has completed a term of community supervision."[9] Collateral attacks brought by a person who has been granted community supervision must be brought in accordance with the statutory procedures set out in Chapter 11 of the Code of Criminal Procedure.[10]

In a collateral attack on the validity of a guilty plea based on the denial of counsel, the accused must prove that his waiver of counsel was not voluntary, knowing, and intelligent.[11] A waiver of counsel is "intelligent when the defendant 'knows what he is doing and his choice is made with eyes open.'"[12] The Supreme Court has not, however, "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel."[13]  Rather, "[t]he information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the

---

[9] *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008).

[10] *Id.* at 396-97.

[11] *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) ("[I]n a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel."); *United States v. Guerrero-Robledo*, 565 F.3d 940, 945 (5th Cir. 2009) (citing cases from other circuits and concluding that "the defendant bears the burden of rebutting the presumption that a defendant validly waived his right to counsel when collaterally attacking a previous conviction."); *see generally Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985) ("In a postconviction collateral attack, the burden is on the applicant to allege and prove facts which, if true, entitle him to relief.").

[12] *Tovar*, 541 U.S. at 88.

[13] *Id.*

defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding."[14]

When a person attacks the validity of his prior guilty plea as that plea is reflected in the written judgment, he bears the burden of defeating the normal presumption that recitals in the written judgment are correct.[15] Those written recitals "are binding in the absence of direct proof of their falsity."[16]

In an Article 11.072 habeas proceeding, the trial judge is the sole finder of fact.[17] The highly deferential *Guzman* standard of review controls in such cases,[18] and under this standard, the appellate court affords almost total deference to a trial court's factual findings

---

[14] *Id.* "The constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Id.* at 81.

[15] *Ex parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986) ("There, of course, is the presumption of the regularity of the judgment of conviction and the proceedings absent a showing to the contrary. . . Further, in [habeas corpus] proceedings there is a presumption of regularity with respect to guilty pleas under Article 1.15, . . . and its forerunners."); *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g) (agreeing with State's argument that,"[u]nder the presumption of regularity of judgments, it must be presumed, in the absence of a contrary showing, that the recitation in the judgment and sentence, which were signed by the judge, is correct, and that the appellant, in writing, in open court, waived the right to a trial by jury. The presumption of regularity created by recitals in the judgment can be overcome only when the record otherwise affirmatively reflects that error occurred.") (citations omitted).

[16] *Breazeale*, 683 S.W.2d at 450.

[17] TEX. CODE CRIM. PROC. art. 11.072, §§ 7, 8 (trial court makes findings of fact and issues order granting or denying relief, with losing party being permitted to appeal).

[18] *Ex parte Garcia*, 353 S.W.3d 785, 787-88 (Tex. Crim. App. 2011) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

when supported by the record, especially when those findings are based upon credibility and demeanor.[19]

An applicant's live, sworn testimony is a sufficient basis for upholding a decision to grant relief in an Article 11.072 habeas proceeding because the trial judge may believe any or all of a witness's testimony.[20] Furthermore, reviewing courts will defer to a trial judge's factual findings that are supported by the record even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories.[21] But in all habeas cases, sworn pleadings are an inadequate basis upon which to grant relief,[22] and matters alleged in the application that are not admitted by the State are considered denied.[23]

III.

Appellee has not met his burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief. Counsel did not file a proper habeas application under Article 11.072. Counsel's statements were not competent evidence. But even if they were, those statements do not prove, by a preponderance of the evidence, that appellee was

---

[19] *Guzman*, 955 S.W.2d at 89.

[20] *Ex parte Garcia*, 353 S.W.3d at 789; *see Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991).

[21] TEX. CODE CRIM. PROC. art. 11.072, § 6(a); *Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006); *Manzi v. State*, 88 S.W.3d 240, 244 (Tex. Crim. App. 2002) (deferential standard of review applies to trial court's resolution of historical facts from conflicting affidavits).

[22] *Ex parte Garcia*, 353 S.W.3d at 789.

[23] TEX. CODE CRIM. PROC. art. 11.072, § 5(b)-(d).

improperly denied the right to counsel before pleading guilty.

**A.     Appellee's "Motion to Vacate" raised the risk that the trial or appellate court would fail to recognize that he intended a "functional writ of habeas corpus."**

Appellee filed a motion to vacate judgment, but there is no such thing in Texas criminal law. The closest thing–a "motion in arrest of judgment"–must be filed within thirty days of sentencing.[24] The parties litigated this motion as if it were an application for a writ of habeas corpus under Article 11.072.[25] If "an application is presented in compliance with the statutory procedural requirements fixed by the Legislature, the judiciary, in the exercise of its core functions, is then responsible for resolving the merits of an applicant's substantive claims."[26] But if an applicant fails to follow the proper procedures outlined in Chapter 11, he risks failing to invoke the trial court's habeas-corpus jurisdiction.[27]

That risk was present here:  The trial judge would have been justified in dismissing

---

[24] *See* TEX. R. APP. P. RULE 22.3 ("A defendant may file a motion in arrest of judgment before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court.").

[25] *See Ex parte Villanueva*, 252 S.W.3d 391, 396-97 (Tex. Crim. App. 2008).

[26] *Id.*

[27] *Jordan v. State*, 54 S.W.3d 783, 786 (Tex. Crim. App. 2001) ("the concept of a 'functional' writ of habeas corpus has the potential to generate confusion and does not satisfy the goal of improving judicial economy. Failing to properly label a claim 'writ of habeas corpus' generates the risk that a trial or appellate court will likewise fail to recognize that a functional writ of habeas corpus has been litigated–requiring correction by this Court and further proceedings. In addition, litigation in this manner evades the requirements of Article 11.14, which, among other things, requires that an oath be made 'that the allegations of the petition are true, according to the belief of the petitioner.'").

this motion as an untimely "motion in arrest of judgment" for lack of jurisdiction.[28] This

"motion to vacate" pleading was not sworn to, and it evaded the requirement of a sworn

pleading for an application for habeas corpus relief.  Nevertheless, the parties, the trial

judge, and the court of appeals considered the pleading a cognizable writ application, and

it did contain "sufficient specific facts that, if proven to be true, might entitle the applicant

to relief."[29]  We therefore will treat appellee's motion as if it were an application for habeas

corpus relief.

**B.      The court of appeals erred in considering counsel's unsworn statements as competent evidence entitling appellee to relief.**

Appellee did not present the trial court with either a sworn pleading or sworn

testimony.  Appellee's motion did not contain affidavits, associated exhibits, a memorandum

of law, or anything else to establish specific facts that might entitle him to relief.  The only

evidence in this proceeding was admitted at the State's request and included the 1998

judgment reciting that appellee "knowingly, intelligently, and voluntarily waived counsel."

That court document is presumed to be regular and its contents are presumed to be correct.[30]

---

[28]*See State v. Shelton*, 396 S.W.3d. 614, 615, 619 (Tex. App.—Amarillo 2012, pet. ref'd) (trial court lacked jurisdiction to grant defendant's motion to dismiss his 1985 conviction some "sixteen years after it discharged appellee from community supervision . . . . [W]e find no authority extending the trial court's jurisdiction to grant appellee judicial clemency beyond thirty days from entry of the May 21, 1996 general discharge order").

[29]*See Ex parte Medina*, 361 S.W.3d 633, 640-41 (Tex. Crim. App. 2011).

[30]*Ex parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986); *see also Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000) ("presumption of regularity is a judicial construct that requires a reviewing court, absent evidence of impropriety, to indulge every presumption in favor of the regularity of the proceedings and documents in the lower court").

We agree with the SPA that appellee failed to present competent evidence to show that he was improperly denied the right to counsel before pleading guilty.

Although the court of appeals found that counsel's statements on the record could be considered evidence because no objection was made,[31] that rule applies only when counsel is speaking from first-hand knowledge.[32]  The "first-hand-knowledge" requirement is clear from the two cases that the court of appeals relied on.

In *Holloway v. Arkansas*,[33] the Supreme Court held that counsel's repeated requests for the appointment of separate counsel, based on a conflict of interests arising from his representation of three co-defendants in the same trial, should have been granted without inquiring into confidential information.  As the Court explained, the trial judge should have accepted counsel's personal knowledge and assessment of the facts underlying the conflict, in part because "attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath."[34]

---

[31] *Guerrero*, 2012 WL 3525647, at *2 (citing *Holloway v. Arkansas*, 435 U.S. 475, 485–86 (1978); *In re M.N.*, 262 S.W.3d 799, 804 (Tex. 2008)).

[32] *DaimlerChrysler Corp. v. Brannon*, 67 S.W.3d 294, 300 (Tex. App.—Texarkana 2001, no pet.) (oath requirement "can be waived by the opponent's not objecting when the opponent knew or should have known that the attorney was providing testimony" if statements are made in an "evidentiary hearing to the court, without a jury, and the statements made by the attorney are within the attorney's personal knowledge") (explaining *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (holding that attorney's in-court unsworn "testimony" was evidence because attorney was speaking of existence and terms of oral settlement agreement to which he was a party)).

[33] 435 U.S. 475  (1978).

[34] *Id.* at 485-86 (internal quotation marks omitted).

And, in *In re M.N.*,[35] the Texas Supreme Court held that a trial judge did not abuse his discretion in granting a motion to extend the time for filing points of appeal, based in part on counsel's explanation for the late filing because that explanation was not objected to at a hearing on the motion. Counsel's unsworn statements could be considered evidence because opposing counsel waived the oath requirement.[36]

In both of these cases, counsel's first-hand knowledge was the source of the "testimony." As pointed out by the SPA, "In this case, habeas counsel had no personal, first-hand knowledge of the events surrounding Appellee's plea in 1998; thus, counsel's statements were not a description of the facts as remembered from the former plea proceeding."[37] Consequently, counsel's statements should not have been considered. As no evidence was introduced in support of habeas-corpus relief, appellee failed to satisfy his requisite burden of proof.

Although we could remand this case to the trial court for further proceedings because the factual record has not been sufficiently developed–in large part because the trial judge

---

[35] 262 S.W.3d 799 (Tex. 2008).

[36] *Id.* at 804; *Banda*, 955 S.W.2d at 272; *see also Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005) (stating that, "while statements by neither [counsel] were under oath, the oath requirement was waived when neither raised any objection in circumstances that clearly indicated each was tendering evidence on the record based on personal knowledge on the sole contested issue," *i.e.*, whether the plaintiff's non-appearance was intentional or the result of conscious indifference); *Molter v. State*, 892 So.2d 1115, 1117 (Fla. Ct. App. 2004) (prosecutor's unsworn statements regarding claimed value of stolen items were insufficient evidence to support amount of restitution ordered by trial court; facts asserted by prosecutor were outside his personal knowledge).

[37] SPA's Brief at 13.

declined to hear from appellee himself–that act would be futile here.  Even if we

accepted counsel's statements as competent evidence, appellee is still not entitled to relief.

**C.      Counsel's statements did not prove, by a preponderance of evidence, that appellee's waiver of counsel was unknowing, unintelligent or involuntary.**

The court of appeals pointed to the evidence that appellee (1) waived his right to

counsel only after he was told that the State would give him deferred adjudication,[38] and (2)

entered his plea without knowing potential deportation consequences.[39]

First, there is nothing improper or coercive about the State's *quid pro quo*.  Appellee

had a right to waive counsel under *Johnson v. Zerbst*,[40] and nothing prohibits a plea

agreement that is conditioned on the waiver of counsel.[41]  The State offered him a most

attractive plea bargain predicated, according to appellee, on his waiver of the right to

counsel.  Neither appellee nor the court of appeals have cited a single case in which the

defendant's plea was constitutionally involuntary because the State offered him an especially

favorable plea bargain if he waived his right to counsel.  Our research has not found such

---

[38] *Guerrero*, 2012 WL 3525647, at *3 ("Guerrero's [habeas counsel] stated that Guerrero signed the form after the State made the offer of deferred adjudication implying that he would not have signed the form without the offer from the State.").

[39] *Id.*

[40] 304 U.S. 458, 465 (1938).

[41] *See United States v. Mezzanatto*, 513 U.S. 196, 209-10 (1995) ("The dilemma flagged by respondent is indistinguishable from any of a number of difficult choices that criminal defendants face every day. The plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but we have repeatedly held that the government 'may encourage a guilty plea by offering substantial benefits in return for the plea.'"; applying case-by-case inquiry into whether waiver was induced by "fraud or coercion").

a case either.

Instead, a guilty plea made after a waiver of counsel simply must be entered knowingly, intelligently, and voluntarily.[42] The decision to waive counsel is made "knowingly and intelligently" if it is made with a full understanding of the abandoned right to counsel.[43] The decision to waive counsel is made "voluntarily" if it is uncoerced.[44] Similarly, a guilty plea is "voluntary" if the plea is the expression of the defendant's own free will, not induced by threats, misrepresentations, or improper promises.[45] A defendant's sworn representation that his waiver of counsel and guilty plea are knowing, intelligent, and voluntary "constitute[s] a formidable barrier in any subsequent collateral proceedings."[46] In this case, the State introduced appellee's signed written waiver of presentence investigation in which appellee stated that he wished to waive his right to counsel, and nothing that appellee's counsel said at the motion hearing establishes that this waiver of counsel was either coerced or unknowing.

---

[42] *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).

[43] *Hatten v. State*, 71 S.W.3d 332, 335 (Tex. Crim. App. 2002); *Johnson v. State*, 614 S.W.2d 116, 119-20 (Tex. Crim. App. 1981) (op. on reh'g) (defendant who waives right to counsel and pleads guilty need not be admonished about the dangers and disadvantages of self-representation; record must simply show that defendant made a knowing, voluntary, and intelligent waiver of counsel).

[44] *Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997) (citing *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993)).

[45] *Kniatt*, 206 S.W.3d at 664.

[46] *Id.* (quotation omitted).

Second, ignorance of possible deportation consequences did not render appellee's waiver of counsel or plea of guilty unconstitutional. Appellee argues that he could not enter a guilty plea until and unless he first had counsel to explain any possible deportation consequences of his plea. There is no such blanket rule for those who are undocumented aliens. The type of warnings and procedures that are required before a waiver of the right to counsel will be recognized depend upon the purposes a lawyer could have served at the particular stage of the proceedings in question and what assistance he could provide to an accused at that stage.[47]

In *Padilla v. Kentucky*,[48] the Supreme Court held that the Sixth Amendment requires an attorney for a criminal defendant to advise his client of the risk of "automatic" deportation as a consequence of a guilty plea.[49] But *Padilla* announced a new rule, so it does not apply retroactively to the collateral review of a state criminal conviction that was final when the *Padilla* opinion was issued in 2010.[50]

---

[47] *See United States v. Ruiz*, 536 U.S. 622, 628-30 (2002) (plea agreement that required defendant to waive her right to discovery of *Brady* impeachment material did not make plea "involuntary, unknowing, or unintelligent"); *Patterson v. Illinois*, 487 U.S. 285 (1988).

[48] 559 U.S. 356, 130 S.Ct. 1473 (2010).

[49] *Id.* at ___, 130 S.Ct. at 1483 (counsel provided ineffective assistance of counsel when immigration law was succinct and clear that defendant would be subject to automatic deportation upon entry of guilty plea, statute was not difficult to read and understand, and counsel's advice concerning possibility of deportation was incorrect).

[50] *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013) (adopting, as a matter of state law, the Supreme Court's reasoning in *Chaidez v. United States*, 133 S.Ct. 1103 (2013), that the *Padilla* court announced a new rule, so defendants whose convictions became final prior to *Padilla* cannot benefit from its holding).

Of course appellee does not have (and never did have) a final conviction because he was placed on deferred-adjudication community supervision and successfully completed that community supervision.  Section 5(c) of Article 42.12 explicitly states,

> On expiration of a community supervision period imposed under Subsection (a), if the judge has not proceeded to adjudication of guilt, the judge shall dismiss the proceedings against the defendant and discharge him. . . . Except as provided by [the repeat offender provisions of] Section 12.42(g), Penal Code, a dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense.[51]

The Texas deferred-adjudication statute was intended to allow a person in appellee's position–a teen-ager who committed a minor misdemeanor offense–to rehabilitate himself and have the charges dismissed.  In the eyes of the Texas Legislature, those who have suffered a single fall from grace need not spend an entire life saddled with all of the collateral consequences a criminal "conviction" carries with it.

However, Congress is not required to recognize the same concepts of rehabilitation and forgiveness as do the many states that do not consider deferred adjudication a "conviction."  And it has explicitly rejected any such notion in the context of immigration law.  It is undisputed that appellee's 1998 guilty plea and successfully completed term of deferred-adjudication community supervision for possessing a small amount of marijuana is a "conviction" for purposes of federal immigration law.[52]

---

[51] TEX. CODE CRIM. PROC. art. 42.12, § 5(c).

[52] *Moosa v. I.N.S.*, 171 F.3d 994, 1001, 1006 (5th Cir. 1999); *see also* 8 U.S.C. § 1101(a)(48)(A).  Section 1101 was amended, effective April 1, 1997, specifically to eliminate

So, for purposes of *Padilla* and federal immigration consequences, appellee had a "final conviction" in 1998.  And because *Padilla* does not apply retroactively, appellee is not entitled, as a matter of constitutional law, to habeas-corpus relief based on a failure by either an attorney or the trial judge to warn him about collateral deportation consequences.[53]

Nor was he entitled to such admonishments before his waiver of the right to counsel and his guilty plea could be recognized as intelligent and voluntary.  The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.[54] Unlike Jose Padilla, appellee was an undocumented immigrant and was deportable for that reason alone, both in 1998 and today.[55]  Had appellee gone to trial with counsel and been acquitted he would not

the "finality" requirement for "convictions" for purposes of deportation.  Congress "deliberately" broadened the definition of the term "conviction" to include deferred adjudication so that "aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered 'convicted'" could not longer escape "the immigration consequences normally attendant upon a conviction."  H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess.1996, 1996 WL 563320 at *496–97 (quoted in *Moosa*, 171 F.3d at 1002).

[53] *Chaidez*, 133 S. Ct. at 1105; *Ex parte de los Reyes*, 392 S.W.3d at 679.

[54] *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

[55] Appellee argues that, because of the 1998 marijuana case, he is now not even eligible to be considered for cancellation of removal under 8 U.S.C. § 1229b.  But, what matters is the state of the law and the state of appellee's knowledge at the time he entered his plea, not events that have occurred since then.  For example, under Section 1229b(b)(1)(A), an undocumented alien is eligible for cancellation of removal proceedings only if he has been "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of his application."  Appellee could not possibly predict, back in 1998, whether he would be able to comply with that provision.  Nor could he predict if he could establish that his removal would "result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child[.]" *Id.*, § 1229b(b)(1)(D).  Furthermore, the federal statute permits the cancellation of removal for only a total of 4,000 aliens a year. *Id.*, § 1229b(e)(1).  Clearly, given

have been transformed into a legal resident.  He could have been deported immediately after walking out of the criminal courthouse.[56]  The prospect of removal therefore could not reasonably have affected his decision to waive counsel and plead guilty.[57]

Finally, appellee relies heavily on the trial judge's failure to provide him with the statutory admonishments set out in Article 26.13 of the Code of Criminal Procedure.  But,

---

the odds and the number of undocumented aliens in the U.S. both in 1998 and today, a reasonable defendant would not likely have based his 1998 decision on whether to enter a guilty plea and accept deferred-adjudication community supervision upon the infinitesimal chance that, if he did not plead guilty, he would (1) be found not guilty; (2) be able to remain undetected in the United States as an undocumented alien for the next ten years without being detained; (3) qualify for cancellation of removal after that ten-year period, and (4) be among the lucky 4,000 aliens a year whose cancellation of removal is permitted.  Those are not decent Las Vegas odds.

[56] If appellee had been a legal permanent resident, his misdemeanor conviction for such a small amount of marijuana would not have subjected him to deportation. *See Moncrieffe v. Holder*, 133 S.Ct. 1678, 1687 (2013) (under the appropriate categorical approach, a state conviction for possession of a small amount of marijuana with intent to distribute it was not an "aggravated felony" for purposes of deportation statute).  Thus, it is readily apparent that it was (and still is) appellee's undocumented status, not his teen-age marijuana peccadillo, that is subjecting him to deportation.  Any sympathy of either the trial judge or the court of appeals to appellee's plight is, perhaps, understandable, but any solution lies with federal immigration law, not a misapplication of Texas law or established constitutional principles.

[57] *See United States v. Perea*, 2012 WL 851185, *5 n.4 (D.Kan. Mar. 8, 2012) (not designated for publication) ("In light of the fact that defendant was already subject to deportation [as an illegal alien], he has not shown how he could have rationally rejected the plea agreement, proceeded to trial and subjected himself to a maximum term of life in prison."); *United States v. Aceves*, 2011 WL 976706, *5 (D.Haw. Mar. 17, 2011) (not designated for publication) (holding that § 2255 movant who was an illegal alien "would not have been transformed into a legal resident . . . even if he had [gone to trial and] been acquitted" and, thus, "it was not his conviction that made him removable"); *United States v. Gutierrez Martinez*, 2010 WL 5266490, *4 (D.Minn. Dec. 17, 2010) (not designated for publication) (holding that because § 2255 movant was an illegal alien when he committed his crime, "his guilty plea had no bearing on his deportability" and, thus, his ineffective assistance claim failed).

as we have repeatedly stated, that article does not apply to misdemeanor cases.[58]

In sum, appellee has not met his burden of defeating the presumption of a regular judgment in the record reflecting a valid waiver of counsel.  That this misdemeanor judgment may bar the possibility of "cancellation of removal" is a severe consequence, but that federal immigration removal action is based upon appellee's 1992 illegal entry, not his 1998 misdemeanor plea.[59]    Allowing a misdemeanor judgment that is itself not a "conviction" under state law, not a ground for deportation, and not a barrier to admission,[60] to operate in this manner may or may not be bad federal immigration law, but we cannot cut a swath through our state criminal law to avoid its consequences.  We therefore reverse the

---

[58] *Gutierrez v. State*, 108 S.W.3d 304, 309 (Tex. Crim. App. 2003) ("We consistently have held that article 26.13 does not apply to misdemeanor cases."); *Johnson v. State*, 614 S.W.2d 116, 120 n.1 (Tex. Crim. App. 1981) (collecting cases) ("However commendable it may be for a trial judge to admonish one accused of a misdemeanor offense, as he must where a person is charged with a felony, see Art. 26.13, . . . there is no requirement in Texas law for a trial court to admonish an accused person of anything if the offense is classified as a misdemeanor.").

[59] *See Barma v. Holder*, 640 F.3d 749, 752-53 (7th Cir. 2011) (explaining that cancellation-of-removal statute is not subject to Section 1182(h) waiver for simple possession of 30 grams or less of marijuana–which applies to inadmissibility determination; "The phrase 'an offense under section 1182(a)(2)' means just what it says, which is to include any offenses that are set forth under § 1182(a)(2), including any offense relating to a controlled substance, and does not include the waiver in § 1182(h) which applies to the inadmissibility determination. Because the conviction for possession of drug paraphernalia [which is an offense relating to possession of 30 grams or less of marijuana under statute] is for a violation of law 'relating to a controlled substance,' Barma is ineligible for cancellation of removal.").

[60] *See id.*; *Moncrieffe v. Holder*, 133 S.Ct. at 1686, n. 7 (noting that "INA exempts from deportable controlled substances offenses 'a single offense involving possession for one's own use of 30 grams or less of marijuana,' 8 U.S.C. § 1227(a)(2)(B)(I)").

court of appeals's opinion and reinstate the trial court's original 1998 deferred-adjudication judgment.

Delivered: June 5, 2013
Publish