COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | No. 08-13-00025-CR |
| | § | |
| | | Appeal from |
| EX PARTE:  DANIEL ALVAREZ | § | |
| | | 384th District Court |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC # 960D10169-384-1) |
| | § | |
| | § | |

## **O P I N I O N**

This is an appeal from a habeas corpus proceeding raising issues familiar to this Court. The trial court granted the Application for Writ of Habeas Corpus based on the belief that *Padilla v. Commonwealth of Kentucky*[1] applied retroactively to guilty pleas taken before *Padilla* was decided.  A case from this Court supported that view at the time the Application was granted, but as noted below, subsequent decisions from the United Sates Supreme Court and Texas Court of Criminal Appeals have taken a different tact.  Faced with this reality, Daniel Alvarez now falls back on a waiver argument and an alternate basis to affirm the trial court's decision.  For the reasons stated below, we reverse the trial court's issuance of the Writ of Habeas Corpus.

---

[1]  559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).  *Padilla* requires defense counsel to advise defendants of the immigration consequences of a plea agreement if they could easily be determined from reading the federal removal statute.  559 U.S. at 368, 130 S.Ct. at 1483.

## FACTUAL SUMMARY

Daniel Alvarez pleaded guilty to possession of more than four grams, but less than 200 grams of cocaine on June 9, 1997. He was given deferred adjudication with five years of probation, a fine, and community service. Before admitting to the offense, the trial judge admonished him that "you can be deported if you plead guilty to that offense, and you can't return to the United States legally, [and] that any application you make for citizenship will be denied." Plea paperwork also contained his acknowledgment that: "I further understand that if I am not a citizen of the United States of America a plea of guilty or nolo contendere to this offense in this cause may result in my being deported, excluded from further admission into the United States, or denied naturalization under Federal law." Alvarez entered his plea and as far as the record shows, he successfully completed the term of that supervised release.

The possession charge grew out of these facts: an undercover police officer observed Alvarez driving a 1986 Oldsmobile which pulled up alongside another car to make what appeared to be an illegal drug sale. The officer followed Alvarez and witnessed several other suspected drug transactions. The police then followed Alvarez to his residence to identify where he lived. The undercover officer watched Alvarez for several weeks and observed him engaging in what appeared to be more drug deals, always using the Oldsmobile to make deliveries.

The police arranged with the City Sanitation Department to obtain the trash from Alvarez' residence. In his rubbish, they found plastic packaging with cocaine residue. Based on what they had learned, the police obtained a search warrant for the Oldsmobile and Alvarez' residence. When the warrant was executed at the residence, the police found a plastic baggie with 7.5 grams of what was later identified as cocaine in a shirt hanging in the closet. There were other people at the house at the time of the search, including Alvarez' wife.

The police executed the search warrant for the Oldsmobile by stopping the vehicle while Alvarez, and another person identified as Julian Jicalan Lopez, were driving around. A search of the vehicle turned up an additional amount of cocaine found in a plastic baggie in an air conditioner vent. Alvarez was then arrested and placed in the back of a patrol car. Another baggie of cocaine was found on the floorboard of the police cruiser where Alvarez was sitting. Jicalan Lopez had no identification when he was arrested. He was taken back to his apartment which he agreed could be searched. The search turned up a large amount of cash.

Both Alvarez and Jicalan Lopez were indicted on charges stemming from the possession and suspected sale of the cocaine. Alvarez was indicted for unlawful possession of a controlled substance in the Penalty Group I (Cocaine) exceeding 4 grams but less than 200 grams.

Jicalan Lopez, whose real name is Santiago Jicalan Sanchez, hired attorney Manny Barraza to defend both him and Alvarez. Jicalan Sanchez (aka Jicalan Lopez) executed an affidavit, submitted in this proceeding, which swore that he paid Barraza $15,000 to defend him and also paid $5,000 to Barraza to arrange for a guilty plea for Alvarez. His affidavit reads in part:

> I also paid Manuel Barraza $5,000.00 to plea Sr. Daniel Alvarez guilty and to obtain probation for him. By directing Attorney Barraza to plead Sr. Daniel Alvarez Manuel Barraza guilty to the cocaine possession charge, Attorney Barraza was able to get me deported with no charges, even though I had a prior arrest record. Attorney Barraza knew I was guilty of the charge because I explained the circumstances of the arrest to him and explained to him that the cocaine which had been seized from the vehicle belonged to me. However, I made it very clear to Attorney Barraza that I did not intend to plead guilty to the cocaine possession charge and wanted the case dismissed. It was explained to him that Sr. Daniel Alvarez would take the 'fall' for the offense. Attorney Barraza agreed to this arrangement and seemed to be satisfied, since I was the person paying for Sr. Daniel Alvarez' legal defense.
>
> While this was taking place, I led Sr. Daniel Alvarez to believe that Attorney Barraza intended to defend him to the best of his ability, when actually, Attorney Barraza and I had already agreed to have Sr. Daniel Alvarez plead guilty to the

3

indicted charge so the charge against me could later be dismissed. Sr. Daniel Alvarez, who had no knowledge of the cocaine in the vehicle, did not know that cocaine was inside the vehicle. Nevertheless, I arranged to have Attorney Barraza to work out a plea of guilty with the State so that I could be released from the charge.

As noted above, Alvarez pleaded guilty with Manny Barraza as his counsel. Jicalan Sanchez (aka Jicalan Lopez) apparently absconded only to be re-arrested in 2002 on other drug charges. The record indicates that he pled guilty to those other drug charges in 2003 and received a six year sentence to be served concurrently with a federal sentence. As a part of that plea deal, the 1997 charge was dismissed because Jicalan Sanchez (aka Jicalan Lopez) was "convicted in another cause." Manny Barraza was his counsel of record at the 2003 plea.

Unfortunately for Alvarez, who is a resident alien, the federal government considers his deferred adjudication to be a conviction for the purposes of removal. *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex.Crim.App. 2013)(state based deferred adjudications are still considered final convictions under federal immigration scheme). Consequently, Alvarez sought to undo his earlier guilty plea.

## PROCEDURAL SUMMARY

Alvarez filed his Application for Writ of Habeas Corpus on July 27, 2012. The Application raised two issues. First, Alvarez contended that his plea counsel did not properly advise him on the immigration aspects of the guilty plea, which we refer to as the *Padilla* ground. His second argument contends that his plea counsel, Manny Barraza, had a conflict of interest in that he represented two clients with divergent interests. We refer to this as the *Cuyler v. Sullivan*[2] or conflict of interest ground.

---

[2] 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Under *Cuyler,* a defendant can establish a violation of his Sixth Amendment right to the effective assistance of counsel if he can show "that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 350, 100 S.Ct. at 1719.

4

The trial court held a hearing on the Application on December 17, 2012. Habeas counsel offered an affidavit from Alvarez, the affidavit of his co-defendant Jicalan Sanchez (aka Jicalan Lopez), and offered testimony from Alvarez' wife, Anabel Alvarez.[3] Manny Barraza did not testify, in person or by affidavit.[4]

The trial court later granted the Application, vacating the 1997 guilty plea. The court issued eight Findings of Fact and two Conclusions of Law. The findings germane to the *Padilla* claim include:

Findings of Fact

.    .    .

6. Attorney Barraza did not advise Alvarez of the immigration consequences of his guilty plea prior to June 9, 1997, the date Alvarez pled guilty. Specifically, Alvarez was never advised that a plea of guilty to the offense of possession of more than 4 but less than 200 grams would subject him to deportation or removal from the United States.

Conclusions of Law

.    .    .

2. Applicant Alvarez was deprived of effective assistance by Attorney Barraza's failure to inform Alvarez of the immigration consequences of his guilty plea to the cocaine possession charge.

The findings germane to Alvarez' *Cuyler v. Sullivan* conflict of interest claim include these:

Findings of Fact

.    .    .

4. Shortly after Alvarez' arrest, the person then-known as Julian Jicalan Lopez retained Attorney Manuel Barraza to represent both Daniel Alvarez and himself

---

[3] Counsel represented that Daniel Alvarez was confined at an "immigration camp" as of the date of the hearing.

[4] We take notice that attorney Manny Barraza was convicted on June 1, 2010 of two counts of wire fraud, deprivation of honest services, making false statements, and he had been sentenced to five years in a federal prison. *See* 75 TEX.B.J. 480-81 (June 2012). On April 23, 2012 he was disbarred. *Id.*

by paying Barraza $15,000.00 for his representation and $5,000.00 to represent Alvarez. The terms of this agreement were that Barraza would seek to obtain a probation sentence for Alvarez on the cocaine possession charge and secure a dismissal for Julian Jicalan Lopez on the same charge.

.    .    .

7. The Court finds that Attorney Manuel Barraza labored under an actual conflict of interest by representing both Alvarez and Sanchez in connection with the pending cocaine possession charge.

8. The Court finds that Attorney Barraza's dual representation of Alvarez and Sanchez had an adverse effect on specific instances of counsel's representation.

Under the heading "Conclusions of Law" appears a typewritten finding that "Applicant Daniel Alvarez was deprived of effective assistance of counsel by reason of Attorney Manuel Barraza's dual representation of both Alvarez and Sanchez on the same cocaine possession charge." There is a handwritten mark, which appears to be a strike-out, through this Conclusion of Law.

In response to a motion filed by the State, we issued an order directing the trial court to clarify what Findings of Fact and Conclusions of Law he relied upon to grant habeas corpus relief. In reply, the trial court issued a new set of findings on May 31, 2013 that are limited to only those original findings germane to the *Padilla* claim. The trial judge did not include *any* of his original findings, as set out above, which pertained to the *Cuyler v. Sullivan* conflict of interest claim.

The State appeals and raises two issues. In Issue One, the State argues that *Padilla* cannot be applied retroactively. In Issue Two, the State argues that even if the rule applied retroactively, Alvarez failed to show any prejudice.

**STANDARD OF REVIEW**

As the applicant for the Writ of Habeas Corpus, Alvarez was obliged to prove his allegations by a preponderance of the evidence. *Kniatt v. State,* 206 S.W.3d 657, 664

6

(Tex.Crim.App. 2006). In reviewing the trial court's decision to grant or deny relief on the Application, we review the facts in the light most favorable to the trial court's ruling and uphold it absent an abuse of discretion. *Ex parte Peterson,* 117 S.W.3d 804, 819 (Tex.Crim.App. 2003). Reviewing courts should afford almost total deference to a trial judge's determination of the historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Ex parte Peterson,* 117 S.W.3d at 819 n.67. When dealing with mixed questions of law and fact, we give the same level of deference if the resolution of those questions turn on an evaluation of credibility and demeanor, and review *de novo* those mixed questions of law and fact that do not depend upon credibility and demeanor. *Id.* at 819.

The reviewing court should affirm as long as the decision is correct on any theory of law applicable to the case. *Ex parte Primrose,* 950 S.W.2d 775, 778 (Tex.App.--Fort Worth 1997, pet. ref'd); *see, e.g., Devoe v. State,* 354 S.W.3d 457, 469 (Tex.Crim.App. 2011)(stating that appellate court will not disturb trial court's evidentiary ruling if ruling is correct on any theory of law applicable to ruling, even if trial court gave wrong reason for correct ruling); *Mahaffey v. State,* 316 S.W.3d 633, 637 (Tex.Crim.App. 2010)(holding that State could permissibly make new argument in support of trial court's ruling for first time on appeal because "an appellate court will uphold the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case'") *quoting State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).

## *PADILLA* ISSUE

Alvarez asserted below that he was denied effective assistance of counsel because his attorney failed to apprise him of the immigration implications of his decision to plead guilty.

7

The Sixth Amendment to the U.S. Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment guarantees *reasonably effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674 (1984); *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App. 1997). To prove his plea was involuntary because of ineffective assistance, Alvarez must show (1) counsel's representation/ advice fell below an objective standard and (2) this deficient performance prejudiced the defense by causing him to give up his right to a trial. *See Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex.Crim.App. 1997).

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in *Strickland. Hernandez v. State,* 726 S.W.2d 53, 56-57 (Tex.Crim.App. 1986). Under the *Strickland* test, an applicant must show that counsel's performance was "deficient," and that the "deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App. 2000).

In the context of Alvarez' claim, the Supreme Court has held that the Sixth Amendment requires a criminal defense attorney to inform his client of the risk of automatic deportation as a result of his guilty plea. *Padilla v. Kentucky,* 559 U.S. 356, 368-69, 130 S.Ct. 1473, 1483, L.Ed.2d 284 (2010); *State v. Guerrero,* 400 S.W.3d 576, 587 (Tex.Crim.App. 2013). The *Padilla* decision issued on March 31, 2010. *Padilla*, 559 U.S. at 356, 130 S.Ct. at 1473. When Alvarez's application was originally heard by the trial court, it was an open question as to whether *Padilla* applied retroactively to those cases where the plea was taken before *Padilla* was handed down. A decision of this Court had held *Padilla* should be applied retroactively. *Ex*

*parte De Los Reyes*, 350 S.W.3d 723, 729 (Tex.App.--El Paso 2011), *rev'd*, 392 S.W.3d 675 (Tex.Crim.App. 2013). But soon thereafter, the retroactivity issue was resolved against Alvarez, both by the United States Supreme Court and the Texas Court of Criminal Appeals. *Chaidez v. United States,* ___ U.S. ___, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013); *Ex parte De Los Reyes,* 392 S.W.3d 675, 679 (Tex.Crim.App. 2013).

The Texas Court of Criminal Appeals has further clarified that while normally an order of deferred adjudication is not considered a final conviction for state law, it is for the purposes of federal immigration law. *State v. Guerrero,* 400 S.W.3d at 587-88. For purposes of a *Padilla* analysis, a final conviction occurs at the time a defendant pleaded guilty and was placed on deferred adjudication. *Id.* Thus, if an Applicant made their plea before March 31, 2010 when *Padilla* was handed down, the failure of trial counsel or the trial judge to inform a defendant of the deportation consequences of the guilty plea does not entitle the defendant to habeas corpus relief. *Guerrero,* 400 S.W.3d at 588.

In this case, it is undisputed that Alvarez's guilty plea, and even his completed term of deferred adjudication, occurred long before *Padilla* was decided. The trial court would have abused its discretion in not applying pre-*Padilla* law. *See Ex parte Sudhakar,* 406 S.W.3d 699, 702 (Tex.App.--Houston [14th Dist.] 2013, pet. ref'd). Under that law, the Sixth Amendment right to counsel does not extend to "collateral" consequences of a prosecution. *Ex parte Morrow,* 952 S.W.2d at 536. Deportation is a collateral consequence of a prosecution. *Hernandez v. State,* 986 S.W.2d 817, 821 (Tex.App.--Austin 1999, pet. ref'd), *citing State v. Jimenez,* 987 S.W.2d 886, 888-89 (Tex.Crim.App. 1999). Consequently, Alvarez' plea was not deficient because of any failure of his trial counsel to warn him about the immigration consequences of his plea. *See Ex parte Sudhakar,* 406 S.W.3d at 702.

9

Alvarez' sole response to this seismic shift in the case law against him is to argue that the State waived the point. He contends that by failing to obtain an explicit ruling from the trial judge on the retroactivity issue, the State cannot raise it now. We disagree.

Generally to preserve error a the party must "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State,* 827 S.W.2d 907, 908-09 (Tex.Crim.App. 1992); TEX.R.APP.P. 33.1. The record in this case is clear that the State raised the question of retroactivity below. The State devoted fifteen pages of its response to the Application outlining the retroactivity issue, including alerting the trial court that the U.S. Supreme Court had accepted the petition for certiorari in *Chaidez*, and that the Texas Court of Criminal Appeals had granted the petition for discretionary review in *De Los Reyes*. At the hearing on the Application, the State restated its position that it did not believe that *Padilla* should be applied retroactively, but conceded that the trial court might be bound by this Court's opinion in *De Los Reyes*. When the trial court granted the Application, it necessarily overruled the State's retroactivity arguments. We find no waiver on this record.

**CONFLICT OF INTEREST ISSUE**

In his brief, Alvarez appears to argue that the trial court's ruling can alternatively be upheld on his *Cuyler v. Sullivan* conflict of interest ground that was originally raised in his Application, but not accepted by the trial court. Alvarez contends that he obtained sufficient findings of fact to allow this Court to sustain the writ on that alternate ground. The State did not favor us with a reply brief to respond to this contention.

While most ineffective assistance of counsel claims are resolved applying the *Strickland* test, when the underlying failing of trial counsel involves a conflict of interest, a different

10

analysis applies. Conflict of interest claims for which no objection was timely made at the original trial or plea are analyzed under *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *Acosta v. State,* 233 S.W.3d 349, 356 (Tex.Crim.App. 2007); *James v. State,* 763 S.W.2d 776, 778-79 (Tex.Crim.App. 1989). The *Cuyler* analysis has two elements. The applicant must demonstrate that (1) defense counsel was burdened by an actual conflict of interest; and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Ex parte McFarland,* 163 S.W.3d 743, 759 n.52 (Tex.Crim.App. 2005); *Pina v. State,* 29 S.W.3d 315, 317 (Tex.App.--El Paso 2000, pet. ref'd).

Joint representation does not automatically create an actual conflict of interest. *See Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)(explaining that joint representation is not per se ineffective assistance); *James,* 763 S.W.2d at 778 (same). An actual conflict of interest exists when "one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *James,* 763 S.W.2d at 779. However, the failure to emphasize the culpability of one defendant over the other does not create an actual conflict. *Kegler v. State,* 16 S.W.3d 908, 913 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd); *Howard v. State,* 966 S.W.2d 821, 827 (Tex.App.--Austin 1998, pet. ref'd).

To meet the second *Cuyler* test--showing an adverse effect--an Applicant must demonstrate that some plausible defense strategy or tactic might have been pursued, but was not, because of the conflict of interest. *Ramirez v. State,* 13 S.W.3d 482, 487 (Tex.App.--Corpus Christi 2000), *pet. dism'd, improvidently granted,* 67 S.W.3d 177 (Tex.Crim.App. 2001). If the Applicant shows both elements, then prejudice is presumed. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052; *Mitchell v. State,* 989 S.W.2d 747, 748 (Tex.Crim.App. 1999).

11

Our first hurdle in analyzing this claim is that the trial court, while agreeing with some of the predicates of the argument, rejected its conclusion. The trial judge originally made findings that Manny Barraza labored under an actual conflict of interest that had "an adverse effect on specific instances of counsel's representation." But the trial court affirmatively struck through a proposed finding that the conflict denied Alvarez effective assistance of counsel. In response to this Court's order, the trial court clearly indicated the conflict of interest findings did not inform his decision to grant the writ.[5]

Even if the earlier findings of fact were meant to survive the newer issued findings, we would be inclined to view them as insufficient to sustain a *Cuyler* type challenge. To be sure, there is some evidence of the existence of a true conflict of interest presented on the record. The allegation that attorney Manny Barraza accepted the representation of two persons with the intent to plead one to the detriment of the other is precisely the type of conflict alluded in *Dukes v. Warden,* 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). In *Dukes,* one of several co-defendants represented by the same firm of attorneys complained that his guilty plea was tainted by a conflict of interest. He had learned that his attorney when pleading out the co-defendants had tried to gain leniency for the other defendants by suggesting that he was the more culpable defendant. *Id.,* 406 U.S. at 254, 92 S.Ct. at 1554. The court rejected the claim, but specifically referenced a finding of the lower court that there was no evidence that the attorney "induced [Dukes] to plead guilty in furtherance of a plan to obtain more favorable consideration from the court for other clients." *Id.,* 406 U.S. at 257, 92 S.Ct. at 1554; *James*, 763 S.W.2d at 784

---

[5] We note that the trial judge signed the order with the new Findings of Fact and Conclusions of Law on May 31, 2013 which was after the United States Supreme Court decided *Chaidez* and the Texas Court of Criminal Appeals decided *De Los Reyes,* ending the retroactivity debate in Texas, and thus effectively undermining the only rationale for his decision. Had the trial court had any belief that the conflict of interest issue had merit, we would have thought he would have included it in his findings at that time.

12

(Clinton, J., concurring)(noting this distinction drawn in *Dukes*). There is, however, some evidence on this record of a plan to favor one defendant over the other.

But in looking at this record, we are not directed to any evidence supporting the second *Cuylar* predicate that the conflict had an adverse effect on *specific instances* of attorney Barraza's conduct. "An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as 'eliciting (or failing to elicit) evidence helpful to one [interest] but harmful to the other.'" *Gaston v. State,* 136 S.W.3d 315, 318 (Tex.App.--Houston [1st Dist.] 2004, pet. struck)(en banc), *quoting Ramirez v. State,* 13 S.W.3d 482, 488 (Tex.App.--Corpus Christi 2000, pet. dism'd). The trial court's original findings contain the relevant language from *Cuyler*, but offer no clue as to what specific instances of conduct were adversely affected. *See Ex parte Flores*, 387 S.W.3d 626, 634 (Tex.Crim.App. 2012)(a trial court's findings of fact and conclusions of law should do more than more than restate the parties' arguments). The only conduct of attorney Barraza reflected by the evidence in the record was the plea bargain itself. There is no evidence of how the terms of the plea was reached, such the negotiations behind the plea. There is no evidence that he took any specific action to use the terms of Alvarez' plea to gain some particular concession for Jicalan Sanchez (aka Jicalan Lopez). There is no evidence of the investigation that Barraza may or may not have undertaken to develop a defense, particularly as to the cocaine found in his house and on his person. We acknowledge that the indictment and plea occurred almost fifteen years before the Application was filed, but Alvarez still bore the burden to present some evidence of each element of his claims.[6]

---

[6] We note that the Texas Court of Criminal Appeals has recently referenced the consequence of the potential loss of evidence when habeas applications involve pleas and convictions occurring many years in the past. *Ex parte Smith,* 444 S.W.3d 661, 666 (Tex.Crim.App. 2014). The court has now specifically authorized habeas courts to *sua sponte* raise the issue of laches, looking in part to the prejudice occasioned by reconstructing events long past. *Ex parte*

In the cases where a conflict of interest was found, the courts could identify in the record specific instances of attorney conduct affected by the conflict. *Holloway,* 435 U.S. at 480, 98 S.Ct. at 1176 (counsel unable to ask one co-defendant questions on the stand due to confidential information imparted from co-defendant); *Ex parte Acosta,* 672 S.W.2d 470, 473-74 (Tex.Crim.App. 1984)(decision to have defendant testify); *Ex parte McCormick,* 645 S.W.2d 801, 804 (Tex.Crim.App. 1983)(decision to oppose separate trials and use of confessions); *Ex parte Parham,* 611 S.W.2d 103, 105 (Tex.Crim.App. 1981)(advice given to one defendant about testifying); *James,* 763 S.W.2d at 778 ("In each of these cases the potential for conflict inherent in multiple representation became an actual conflict due to the inculpatory or exculpatory nature of testimony or the strategy adopted by defense counsel in the particular case. That is not reflected in the case before us today."). We simply find none of these types of specific actions developed in the record that would support the second *Cuyler* finding, even under our highly deferential standard of review.

And while we recognize that a conflict of interest may implicate not only what an attorney does, but what he fails to do, *Holloway,* 435 U.S. at 489-90, 98 S.Ct. at 1181, we do not find any specifics of Barraza's conduct, other than attending a plea hearing in this record. Nothing suggests there was any other viable defense strategy that he could have pursued, or action that he could have taken on Alvarez' behalf.[7]

---

*Bowman*, NO. PD-1375-14, ___ S.W.3d ___, 2014 WL 6464635 (Tex.Crim.App. Nov. 19, 2014); *Ex parte Smith,* 444 S.W.3d at 667.

[7] His habeas counsel argued at the hearing that Alvarez could have placed all the blame on Jicalan Sanchez (aka Jicalan Lopez) for the cocaine in the car, or his wife for the cocaine in his house, but habeas counsel's argument is not evidence. *Guerrero,* 400 S.W.3d at 586 (habeas counsel's statements not evidence and would not support findings).

We sustain Issue One and find Issue Two to be moot. The trial court's judgment is reversed and judgment is rendered denying the Application for Writ of Habeas Corpus. TEX.R.APP.P. 43.2(c).

January 28, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)