**AFFIRMED; and Opinion Filed December 13, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-13-00841-CR**

**THE STATE OF TEXAS, Appellant**
**V.**
**JESUS ALBERTO VILLEGAS, JR., Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. WX13-90003**

## MEMORANDUM OPINION

Before Justices O''Neill, Lang-Miers, and Evans
Opinion by Justice O'Neill

The State appeals the trial court's order granting appellee's application for writ of habeas corpus. In a single issue, the State contends the trial court erred in granting appellee's application because appellee failed to prove his plea of nolo contendere was involuntary due to ineffective assistance of counsel. We affirm the trial court's order.

### BACKGROUND

Appellee was arrested on December 6, 2011 and charged with the state jail felony offense of theft of property with a value of $1,500 or more but less than $20,000. On October 26, 2012, appellee entered a negotiated nolo contendere plea to the offense. Pursuant to the plea bargain, the trial court placed appellee on deferred adjudication community supervision for three years and assessed a $1,500 fine. Shortly thereafter, appellee was taken into custody by Immigration and Customs Enforcement (ICE) and is being held for deportation.

In January 2013, appellee filed an application for writ of habeas corpus alleging his plea was involuntary due to ineffective assistance of counsel. In his application, appellee stated he is a citizen of Mexico who has lived in the United States since he was three years old. Appellee alleged trial counsel failed to inform him that deferred adjudication would be treated as a conviction for purposes of federal immigration law nor did trial counsel inform him that he faced automatic deportation if he entered a plea of nolo contendere to the offense charged.

The trial court conducted a hearing on appellee's writ application. The same trial judge who took appellee's plea presided during the writ hearing. The evidence showed appellee retained counsel to represent him in the criminal proceedings. During the course of the representation, appellee met with three attorneys affiliated with each other—Richard C. McConathy, Brian Alan Bolton, and Allen Everett Gray, III. The trial court heard testimony from appellee and Gray. In addition, appellee, Bolton, and Gray submitted affidavits.

Appellee claimed he met with McConathy once, with Bolton four times, and with Gray fifteen-to-seventeen times. Appellee testified it was always Gray who accompanied him to court. Other than filling out a form at the beginning of the representation in which he indicated he was not a citizen, appellee alleged none of the attorneys inquired about his immigration status, discussed the immigration consequences of the plea with him, or referred him to an immigration lawyer. Furthermore, although Bolton explained to him the details of the State's plea bargain offer, Bolton did not explain what deferred adjudication entailed or that it would be considered an aggravated felony conviction for immigration purposes. Appellee admitted he did not pay the full amount of fees owed to the attorneys and, as a result, Bolton filed a motion to withdraw from the case. According to appellee, the fee dispute caused Bolton to lose interest in the case and the possibility of going to trial and appellee's defenses were never discussed.

–2–

Appellee testified Gray was present when he filled out the plea paperwork. Gray told appellee that no one except the government would see his charge. Appellee understood that to mean that his deferred adjudication would show up only if he tried to work for the government. Appellee admitted he read the trial court's written admonishment but he did not understand it to mean his deportation was a certainty. Appellee further admitted that the trial court orally admonished him during the plea hearing that his plea rendered him subject to deportation and he testified he felt concerned but he thought the possibility of deportation had a "really low chance of happening."[1] Appellee denied he would have entered his plea had he understood he faced certain deportation. Appellee swore that his immigration status was the most important thing to him because his parents and siblings live in Texas and he has no family in Mexico. Appellee stated that had he understood the immigration consequences, he would have pushed for a plea bargain to a charge that does not carry deportation consequences or he would have risked the possibility of receiving a maximum sentence at trial and still being deported if there was a chance he would be acquitted.

In his affidavit, Bolton swore all three attorneys appeared at the courthouse for appellee and had "extensive conversations [with appellee] regarding the alleged evidence in [appellee's] case, the merits of his case, and the potential dispositions available to him." Bolton averred he "specifically advised [appellee] that he would likely be deported" if he was not a citizen, that "such matters are solely up to ICE," that judges handling immigration proceedings view things differently than state criminal law judges, and that it was important for appellee to consult an immigration attorney. Bolton stated appellee was advised that his plea would result in a felony conviction involving moral turpitude. Bolton further stated it was Gray "who thoroughly advised [appellee] regarding immigration consequences surrounding [appellee's] plea on the date of

---

[1] Although the parties cite in their briefs to the reporter's record from the plea hearing, it was not filed as part of the record on appeal.

sentencing." Bolton dismissed as disingenuous appellee's claim that he would have proceeded to trial. According to Bolton, appellee "wanted to avoid a conviction at all costs." Bolton also stated appellee had failed to pay his legal fees and was in breach of contract. Bolton stated appellee could not have gone to trial unless he hired another law firm or remitted the fees due, including the agreed-upon trial fee.

Gray's affidavit averred he had reviewed the plea agreement documents with appellee including the trial court's written admonishment about the immigration consequences of the plea that warned appellee his plea was "almost certain to result in" his deportation. Gray averred he asked appellee if he understood the trial court's admonition and "if he had discussed the immigration implications of his case and/or his plea bargain" with Bolton and McConathy. Gray stated he had explained to appellee that appellee's deferred adjudication would be treated as a conviction and that under immigration law, theft is considered a crime of moral turpitude.

During the writ hearing, Gray testified he appeared in the case on behalf of The Law Office of Richard C. McConathy for whom he does contract work. Gray testified he never discussed the issues in the case with appellee and his involvement was limited to appearing on appellee's behalf for Bolton and McConathy. Gray described his responsibility as appearing in court to pass the case when necessary, speaking with the State and transmitting offers to "the office" and appellee. Gray testified the decision to enter a guilty plea "would have been made between [appellee] and the office." Gray testified he was unaware if the State ever offered to reduce the charge but he admitted "most of the substantive negotiation took place between [Bolton] and the State, not me." Gray testified that he first learned appellee was not a citizen when he and appellee were reviewing the plea paperwork. Gray could not recall the exact advice he gave to appellee but he recalled the gist of his advice was that "the odds were absolutely overwhelming that he couldn't remain in this country" or that deportation was "virtually certain."

–4–

When pressed on why he did not tell appellee definitively that appellee would be deported, Gray replied, "Well, things fall through the cracks. I think that I made it clear based on the fact that deferred is treated as a conviction under immigration law and that theft was a crime of moral turpitude or an aggravated felony, that his chances were next to nothing."

The trial court questioned Gray about how the immigration advice could "fall through the cracks" and whether he had anything in writing showing appellee had received the required deportation advice. Gray responded that he ordinarily does that in his office as part of his routine intake paperwork but in this case, appellee had never come to his office because appellee was McConathy's client, and Gray could not testify as to what happened during appellee's consultations with McConathy and Bolton. After hearing all the evidence, the trial court vacated appellee's guilty plea on the ground it was entered involuntarily.

## APPLICABLE LAW

An applicant for habeas corpus relief must prove his claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In post-trial habeas proceedings in which the applicant received community supervision, the trial judge is the sole finder of fact. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). The reviewing court affords almost total deference to the trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor. *Id*. An applicant's live, sworn testimony is sufficient to uphold the trial court's determination to grant relief because the trial court may believe any or all of a witness's testimony. *Id*. In reviewing the trial court's order, we view the facts in the light most favorable to the trial court's ruling, and we uphold the ruling absent an abuse of discretion. *Kniatt*, 206 S.W.3d at 664. This deferential review applies even if the trial court's findings are implied rather than explicit and based on affidavits rather than live testimony. *Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim.

App. 2006). If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007).

As appellee points out in his brief, the trial court did not make findings of fact and conclusions of law in this case. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072(7)(a) (West Supp. 2013). The record does not show that either party brought the failure to make express findings to the trial court's attention. In the absence of express findings of fact, we will impute implied findings of fact that support the ruling when such implied findings are both reasonable and supported by the record. *See Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).

To obtain relief on the ground of ineffective assistance of counsel, appellee must show (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Padilla v. Kentucky*, 559 U.S. 356, 366 (2010); *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). In the context of a complaint about counsel's plea advice, appellee must show (1) counsel's plea advice did not fall within the range of competence demanded of attorneys in criminal cases and (2) there is a reasonable probability that, but for counsel's errors, appellee would have insisted on going to trial rather than pleading guilty. *Ex parte Harrington,* 310 S.W.3d 452, 458 (Tex. Crim. App. 2010).

Without conceding that appellee's legal representation was deficient or that he was not admonished properly, the State acknowledges this Court's deference to the trial court's credibility determinations and limits its appellate argument to contending appellee failed to show he suffered any prejudice under the second *Strickland* prong. Under the second prong of the test, a reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland*, 466 U.S. at 694. In the context of a plea-bargained guilty plea, the applicant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *See Padilla*, 559 U.S. at 372. The defendant need not show he would have received a more favorable outcome at trial. *Johnson*, 169 S.W.3d at 231.

Inaccurate advice regarding a non-citizen defendant's prospective deportation may constitute ineffective assistance. *See Padilla*, 559 U.S. at 366. When the consequences are "not succinct and straightforward," counsel's duty is to advise the defendant of the possibility that the plea may carry a risk of adverse immigration consequences. *Id*. at 369. When, however, federal immigration law clearly specifies that the defendant will be deported, counsel must affirmatively and correctly advise the defendant about immigration consequences of the plea. *Id*.; *see also Ex parte Moussazadeh*, 361 S.W.3d 684, 691 (Tex. Crim. App. 2012).

Under federal immigration law, deferred adjudication is considered to be a conviction if the defendant entered a guilty or no-contest plea and punishment was assessed. *See* 8 U.S.C.A. § 1101(a)(48)(A) (West 2005). Federal immigration law provides an alien is automatically deportable if he commits an aggravated felony at any time after admission to the United States. *See id*. at § 1227 (a)(2)(iii). Theft offenses for which the term of imprisonment exceeds one year are considered aggravated felonies under federal law. *See id*. at § 1101(a)(43)(G). An alien may also be deported if he is convicted within five years of admission to the United States of "a crime involving moral turpitude . . . for which a sentence of one year or longer may be imposed . . . ." *See id*. at § 1227(a)(2)(A)(i).

**ANALYSIS**

The State first contends appellee failed to prove his claim because the record contains sufficient evidence of his guilt in the form of an arrest affidavit prepared by an Addison Police

Department investigator and no evidence of any factual or legal defenses to the claim. We disagree.

There is little evidence reflecting the merits of the case. The record shows appellee confessed to an investigator but the record is silent on the content and circumstances of the confession. Appellee suggests he could have recanted the confession or there could be grounds for suppressing it. Appellee testified none of the attorneys ever discussed his possible defenses with him. Appellee testified the computers he allegedly stole were used. There is no evidence in the record of their fair market value. Appellee is being held for deportation for committing an aggravated felony. If the fair market value of the computers was less than $1,500, then the offense would be a Class A misdemeanor rather than an aggravated felony for immigration purposes. *See* TEX. PENAL CODE ANN. §§ 31.03(e)(3), (4)(A) (West Supp. 2013); TEX. PENAL CODE ANN. § 31.08(a)(1) (West 2011); *Simmons v. State*, 109 S.W.3d 469, 473 (Tex. Crim. App. 2003) (offering definition of "fair market value"). On the record presented, we cannot agree with the State that the record shows appellee's guilt and a lack of defenses.

Citing *Ex parte Moreno*, 382 S.W.3d 523 (Tex. App.—Fort Worth 2012, pet. ref'd), the State next contends appellee's actions belie his statement that his immigration status was his most important consideration. The State points out appellee did not take any steps to legalize his status in the United States in the nineteen years he has been here, he never brought up his immigration status with his attorneys, he admits he read and understood the trial court's written deportation admonishment but made no inquiries about it, and he proceeded with the plea despite the warnings he received about deportation.

We note that the nineteen-year period of inaction the State references begins when appellee was three years old. Moreover, the record shows appellee entered his plea under the belief that he was not being convicted, but rather was avoiding a conviction, and his plea would

affect him only if he applied for a job with the government. The warnings and admonitions the State contends appellee should have heeded did not include the definitive statement that he faced certain deportation and thus were insufficient as a matter of law. *See Padilla*, 559 U.S. at 369. Finally, we note that *Moreno* is distinguishable from the present case because the trial court in *Moreno* denied relief on Moreno's writ application. *See Moreno*, 382 S.W.3d at 525. In affirming the trial court's decision, the court in *Moreno* stated it was deciding the case "based upon our deferential review of the trial court decision that appellant failed to prove the prejudice requirement of the *Strickland* test." *Id*. at 527. The reviewing court supported the trial court's "judgment call" that the applicant failed to prove he would not have pleaded guilty but for trial counsel's allegedly deficient conduct. *Id*. at 530. We also apply a deferential standard of review but in this case the trial court concluded appellee was credible.

Finally, citing *Moreno* again, the State contends the record does not support appellee's protestations that had he known he would be deported, he would have taken the case to trial or pushed for a plea bargain to a charge without deportation consequences. The State points out there is no evidence the State would have offered a better deal for a plea to a non-deportable offense and appellee's three years of deferred adjudication is considerably less onerous than the maximum two year sentence appellee could have received at trial. Moreover, the State argues, appellee is an illegal immigrant subject to deportation at any time including after being acquitted at trial. *See Guerrero*, 400 S.W.3d at 588–89 (concluding prospect of removal could not have reasonably affected undocumented immigrant's decision to waive counsel and plead guilty because he faced deportation even if he was acquitted at trial).

There is no evidence in the record regarding how flexible the State was willing to be in negotiating appellee's plea bargain. Gray testified he relayed offers from the State and Bolton handled plea negotiations. Thus, it appears some negotiations occurred. Without further

evidence, we cannot adopt the State's supposition that the plea bargain terms were inflexible especially if appellee demonstrated a credible resolve to proceed to trial to avoid the drastic consequence of certain deportation.

We further reject the State's position that the plea bargain was particularly attractive when weighed against the possibility of losing at trial and facing a maximum sentence. The defendant in *Moreno* faced first- and second-degree felony charges for possession with intent to deliver cocaine and possession of cocaine. *See Moreno*, 382 S.W.3d at 524. Moreno's plea bargain involved dropping the first-degree felony charge and pleading guilty to the less serious possession offense. *See id.* Thus, Moreno faced a risk of first-degree felony punishment if he proceeded to trial and his guilty plea was traded for a substantial benefit. In contrast, appellee risked a maximum of two years in state jail if he proceeded to trial. *See* TEX. PENAL CODE ANN. § 12.35 (West 2011) (establishing the penalty range for a state jail felony). Appellee testified he has a clean record except for the theft charge. The trial court could have reasonably assumed that rejecting the plea bargain and proceeding to trial would have carried little risk for a first-time offender beyond the plea-bargained result appellee actually obtained.

We also reject the State's contention that an acquittal would be meaningless in light of appellee's status as an undocumented alien. But for his conviction in this case, appellee falls within the class of undocumented immigrants entitled to deferred action on removal proceedings. *See Crane v. Napolitano*, 920 F.Supp.2d 724, 729–30 (N.D. Tex. 2013) (explaining background and requirements for June 15, 2012 directive entitled "Exercising Prosecutorial Discretion With Respect to Individuals Who Came to the United States as Children" issued by Secretary of Homeland Security Janet Napolitano). Appellee raised the issue of deferred action and testified about his eligibility.

## CONCLUSION

After reviewing the evidence under the appropriately deferential standard of review, we cannot conclude the trial court abused its discretion in determining appellee satisfied his burden of proof to show a decision to reject the plea bargain would have been rational under the circumstances. *See Padilla*, 559 U.S. at 372. Thus, we hold the trial court did not abuse its discretion in concluding appellee's guilty plea was involuntary due to ineffective assistance of counsel. *See id.* at 366–69. We overrule the State's sole issue.

We affirm the trial court's order granting relief on appellee's application for writ of habeas corpus.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130841F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-13-00841-CR      V.

JESUS ALBERTO VILLEGAS, JR.,
Appellee

On Appeal from the 203rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. WX13-90003.
Opinion delivered by Justice O'Neill.
Justices Lang-Miers and Evans participating.

Based on the Court's opinion of this date, the order of the trial court granting relief on appellee's application for writ of habeas corpus is **AFFIRMED**.

Judgment entered this 13th day of December, 2013.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE