ACCEPTED
01-14-00895-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/7/2015 3:49:19 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00895-CR
IN THE
COURT OF APPEALS
FOR THE
FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/7/2015 3:49:19 PM

CHRISTOPHER A. PRINE
Clerk

**LAMAR MARCELL HUNTER**, Appellant
**V.**
**THE STATE OF TEXAS**, Appellee

Appealed from the 10TH Judicial District Court
of Galveston County, Texas
Cause No. 12-CR-1921

**BRIEF FOR THE STATE OF TEXAS**

**JACK ROADY**
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY

**ALLISON LINDBLADE**
ASSISTANT CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY
STATE BAR NO.  24062850
600 59TH STREET, SUITE 1001
GALVESTON, TX 77551
(409) 766-2355, FAX (409) 766-2290
allison.lindblade@co.galveston.tx.us

ORAL ARGUMENT NOT REQUESTED

i

## IDENTITY OF PARTIES AND COUNSEL

Presiding Judge                     Hon. Kerry Neves

Appellant                           Lamar Marcell Hunter

Appellee                            The State of Texas

Attorneys for Appellant             Anthony Hernandez – Trial

                                    Joel Bennett – Motion for New Trial

                                    Joseph Kyle Verret – Appeal

Attorneys for State                 Xochitl Vandiver-Gaskin – Trial

                                    Allison Lindblade – Appeal

# TABLE OF CONTENTS

Identity of Parties and Counsel ....... ii

Table of Contents ....... iii

Index of Authorities ....... v

Summary of the Argument ....... 1

Statement of Facts ....... 3

Second Issue ....... 10

An ineffective assistance of counsel claim that renders a plea involuntary depends on (1) if counsel's advice was within the range of competence and, if not, (2) if there's a reasonable probability that, but for counsel's errors, the defendant wouldn't have pleaded guilty and would've insisted on a trial.

If the defendant was properly admonished, there is a *prima facie* showing that the guilty plea was made voluntarily.

How's Hunter's plea involuntary if the record shows he was admonished, he attested to his voluntariness, and his strategy was to avoid trial?

Argument and Authorities ....... 10

Standard of Review and applicable law ....... 11

A voluntary plea ....... 13

Article 42.12 Section 5 (a) Deferred Adjudication; Community Supervision ....... 14

Trial Court's ruling at sentencing: "There's no excuse just by saying you were immature." ....... 14

Trial Court's ruling on the Motion for New Trial: "the fact of this specific finding not being discussed and making a difference to me is not at all credible."     16

The Trial Court denied Hunter's Motion for New Trial because he didn't find Hunter's argument credible     17

Hunter wanted to avoid a trial and try to reunite his family     18

Hunter cannot overcome the presumption that his plea was voluntary     19

Whichever way it's sliced – the outcome would've been the same     21

Conclusion: hindsight is a useless tool     24

Conclusion and Prayer     26

Certificate of Service     27

Certificate of Compliance     27

# INDEX OF AUTHORITIES

## CASES

*Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). ............... 12, 13

*Barrett v. State*, 01-00-00763-CR, 2001 WL 1298867, at *2 (Tex. App.—Houston [1st Dist.] Oct. 25, 2001, no pet.)........................................................................25

*Burnell v. State*, 01-10-00214-CR, 2012 WL 29200, at *7 (Tex. App.—Houston [1st Dist.] Jan. 5, 2012, pet. ref'd) ...........................................................................19

*Chapa v. State*, 407 S.W.3d 428, 434 (Tex. App.—Houston [14th Dist.] 2013, no pet.)..................................................................................................................19

*Dusenberry v. State,* 915 S.W.2d 947, 949 (Tex App.—Houston [1st Dist.] 1996, pet. ref'd). ................................................................................................. 20, 24

*Ex parte Mable,* 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). ..........................13

*Ex parte Moody,* 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999) ............... 12, 21

*Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex. Crim. App. 1997) ..........................12

*Ford v. State*, 845 S.W.2d 315, 316 (Tex. App.—Houston [1st Dist.] 1992, no pet.) ...................................................................................................... 14, 20

*Graves v. State,* 803 S.W.2d 342, 345–47 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) .................................................................................................19

*Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)................................13

*Lopez v. State*, 428 S.W.3d 271, 278 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)....................................................................................................................11

*Mallett v. State,* 65 S.W.3d 59, 64 (Tex. Crim. App. 2001). ...................................14

*Martinez v. State,* 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). ..........................13

*McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) ...................................................................................................13

*Miranda v. State*, 14-14-00091-CR, 2015 WL 1870329, at *1 (Tex. App.—Houston [14th Dist.] Apr. 23, 2015, no. pet. h.) ....................................24

*Parkinson v. State*, 01-14-00476-CR, 2015 WL 3637983, at *1 (Tex. App.—Houston [1st Dist.] June 11, 2015, no. pet. h.) ...................................23

*Rodriguez v. State*, 01-14-00206-CR, 2015 WL 457463, at *1 (Tex. App.—Houston [1st Dist.] Feb. 3, 2015, no pet.)............................................23

*State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) ..........................20

*Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068 (1984) ......................................................................................... 12, 21

*Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)...................... 12, 24

*Warren v. State*, 01-12-00649-CR, 2014 WL 1516540, at *3-4 (Tex. App.—Houston [1st Dist.] Apr. 17, 2014, no pet.)...........................................13

*Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ...........................12

**CONSTITUTION**

U.S. CONST. AMEND. VI...................................................................................11

## STATUTES

TEX. CODE CRIM. PROC. art. 26.13(b) ........................................................................13

TEX. CRIM. PROC. CODE § art. 42.12(a) ...................................................... 14, 17, 18

**TO THE HONORABLE COURT OF APPEALS:**

Now comes Jack Roady, Criminal District Attorney for Galveston County, Texas, and files this brief for the State of Texas.

## SUMMARY OF THE ARGUMENT

Lamar Marcell Hunter pleaded guilty to aggravated sexual assault of a child without a sentencing recommendation. After hearing punishment evidence, where Hunter requested probation, the Trial Court sentenced him to 20 years confinement in the Institution of Texas Department of Criminal Justice. In his second issue on appeal, Hunter alleged that he would not have pled guilty and requested punishment by the Trial Court had he known that the best interest of the victim was a necessary finding by the Trial Court to place him on deferred probation. Instead, Hunter claimed he would have demanded a jury trial on the issue of guilt-innocence.[1] Hunter claims his Trial Counsel was ineffective and this rendered his plea involuntary.

The Trial Court said in its ruling on the Motion for New Trial that the argument about this specific finding making a difference in the outcome of the proceedings was not at all credible.

Hunter only prevails in his argument if he proves that, but for counsel's errors, he would've insisted on a trial. Although Hunter's Trial Counsel admitted that he

---

[1] Hunter brief, p. 1.

didn't advise Hunter of the required best interest of the victim finding, both Hunter and his Trial Counsel testified that Hunter didn't want a trial. They testified that Hunter didn't want to put the victim through the trauma of a trial because she was family and had gone on with her life.[2] The record does not support Hunter's claim that he would've insisted on a jury trial.

The record establishes that Hunter's plea of guilty was voluntary. Hunter admitted that he was advised and admonished regarding the range of punishment that the Trial Court could use. Moreover, Hunter signed admonishments attesting to the voluntariness of his plea. For all these reasons, the Trial Court's judgment should be affirmed.

Hunter's first issue on appeal addressed his right to appeal. The State joins Hunter and agrees that the initial Trial Certificate of Defendant's Right to Appeal signed by Hunter and the Trial Court improperly limited Hunter's right to appeal.[3] The State and Hunter filed an agreed motion to abate this appeal to correct the Trial Court's Certificate of Defendant's Right to Appeal. This Court abated the case. As a result, the Trial Court amended the certificate of defendant's right to appeal.[4] Therefore, this issue will not be discussed herein.

## STATEMENT OF FACTS

---

[2] R.R.III:12-15, 37-38.
[3] C.R. 41.
[4] Supplemental C.R.

When A.P.[5] was 9 years old, her family lived with extended family for the summer because her father lost his job.[6] Hunter, A.P.'s cousin, also lived there.[7] Hunter was 25 years old that summer.[8]

While A.P. and her family were living with Hunter and his family, Hunter repeatedly sexually assaulted her.[9] For several years, A.P. didn't tell anyone what Hunter did to her because she was afraid of getting into trouble.[10]

A.P. outcried to her mother, Jennifer, when she was 15 years old.[11] A.P. was watching a movie with her family when a scene in the movie depicted a little girl in a sexually abusive situation.[12] A.P. ran into her room and eventually called for her mother.[13] She told her mother that Hunter raped her.[14]

A.P swore her mother to secrecy because A.P. was close to Hunter's son Nicholas.[15] A.P. didn't want Hunter to go to jail because it would leave Nicholas

---

[5] The victim was given a pseudonym in order to protect her privacy. The pseudonym was used in the indictment. However, the victim testified at punishment using her legal name.
[6] R.R.II:45; the one-volume Clerk's Record is referred to in the State's Brief as "C.R. page"; the Reporter's Record is several volumes and is referred to as "R.R. volume no.: page."
[7] R.R.II:15, 45-46.
[8] R.R.II:72.
[9] R.R.II:30, 77.
[10] R.R.II:29, 31.
[11] R.R.II:47.
[12] R.R.II:33, 47.
[13] R.R.II:34, 47.
[14] R.R.II:34, 47.
[15] R.R.II:39, 47.

3

without a father.[16] But when A.P. found out that Hunter had a new daughter, she told her mother that she wanted to tell the authorities.[17]

La Marque Police Department's Detective Danielle Herman received the case from the Texas Department of Family Protective Services.[18] During her investigation, Detective Herman confirmed that A.P. outcried to the mother.[19] Detective Herman corroborated some of the details given by A.P. and her mother.[20] Detective Herman also interviewed Hunter and confirmed that he lived with A.P. and the details of the residence.[21]

Hunter was indicted with sexual assault of a child by intentionally or knowingly causing the penetration of the sexual organ of A.P., a child who was then younger than 14 years of age, by the defendant's sexual organ.[22]

On March 5, 2014, Hunter pled guilty and elected to be sentenced by the Trial Court with no recommendation by the State.[23] The Trial Court ordered a Presentencing Investigation Report.[24] Hunter signed an Application for Probation.[25]

---

[16] R.R.II:39, 47.
[17] R.R.II:49.
[18] R.R.II:12.
[19] R.R.II:12.
[20] R.R.II:15.
[21] R.R.II:15.
[22] C.R. 5.
[23] R.R.II:8.
[24] R.R.III:10.
[25] C.R. 32.

A.P., now a 19 year old mother and college student studying neonatal nursing, testified at the punishment hearing.[26] She testified in detail about how Hunter repeatedly sexually abused her when she was 9 years old.[27] A.P. testified that she didn't tell anyone about the abuse because she thought she was going to get into trouble "'cause you're not supposed to be doing that at a young age."[28] A.P. testified that when she saw the same thing happen to girls on T.V., she had flashbacks.[29] A.P. testified that she eventually told her mother about the rapes when they were watching something on T.V. that upset her.[30]

A.P. testified that her family split apart after everyone found out.[31] A.P. told the Trial Court how her relationship with her father changed because her father is torn between his daughter and his nephew.[32] A.P. testified that her relationship with her father is still shaky.[33]

A.P. testified that it was horrible to go through the police process.[34] A.P. testified that there was an incident after she disclosed the abuse where someone was blocking the driveway at her house.[35] A.P. testified that when she made the

---

[26] R.R.II:21.
[27] R.R.II:27-31.
[28] R.R.II:29.
[29] R.R.II:33.
[30] R.R.II:33-34.
[31] R.R.II:39.
[32] R.R.II:37.
[33] R.R.II:37.
[34] R.R.II:40.
[35] R.R.II:40.

circle around the cul-de-sac, they closely followed her for about 5 minutes.[36] A.P. testified that this scared her.[37] A.P. testified that she continues to be watchful.[38]

A.P.'s mother, Jennifer Hunter, testified that after the abuse was disclosed to the family, her and her husband separated.[39] Jennifer testified that her husband is torn and does not support A.P.[40] Jennifer testified that her husband's family, except for A.P.'s grandfather, is estranged and not supportive.[41] Jennifer testified that her and her children have grown stronger because they support A.P. and try to keep her confident so she can move on with her life.[42]

Hunter's wife, Nicole Hunter, testified that she's known Hunter since they were in 6th grade.[43] Nicole testified that she and Hunter had 10 year old boy, a 3 year old girl, and a child due in November.[44] Nicole testified that Hunter just made a mistake and that she had no concerns about him being around her children.[45]

A.P.'s father, Geoffrey Hunter, testified on behalf of Hunter.[46] Geoffrey testified that he had forgiven Hunter.[47] Geoffrey told that Trial Court that to punish

---

[36] R.R.II:40.
[37] R.R.II:40.
[38] R.R.II:40.
[39] R.R.II:51.
[40] R.R.II:51.
[41] R.R.II:52.
[42] R.R.II:51.
[43] R.R.II:57.
[44] R.R.II:58.
[45] R.R.II:61.
[46] R.R.II:64.
[47] R.R.II:65.

Hunter to the highest degree would make everything a lot worse between both families.[48]  Geoffrey told that Trial Court that he didn't want to see Hunter away from his family but he wanted some justice.[49]

Hunter testified at punishment. He testified he was deeply sorry for what he had done.[50] Hunter testified how he was sexually abused from the age of 5 until he was 9 years old.[51] Hunter testified how he never disclosed the abuse.[52] He testified, "and being that I done it to her, I pretty much feel that she would be upset too because that happened to me as well."[53]

Hunter testified that he wasn't sexually attracted to his cousin even though he raped her repeatedly.[54] Hunter testified that he didn't know why he repeatedly sexually assaulted his cousin.[55] He testified he was young and he didn't know what he was thinking.[56] Hunter testified that he was very immature at the age of 25.[57] Hunter testified that he didn't realize the consequences of his actions at age 25.[58]

---

[48] R.R.II:67.
[49] R.R.II:67.
[50] R.R.II:74.
[51] R.R.II:77.
[52] R.R.II:77.
[53] R.R.II:77.
[54] R.R.II:79.
[55] R.R.II:83-84.
[56] R.R.II:85.
[57] R.R.II:78.
[58] R.R.II:72, 79.

Hunter testified that he was a different man now.[59] Hunter testified that he would never do it again even though he didn't know why he did it the first time.[60] Hunter testified that he had not attended any classes or counseling to address the sexual abuse issues.[61]

Hunter told the Trial Court that he could abide by all the conditions of probations.[62] Hunter testified that he could successfully complete probation if the Trial Court were to give him probation.[63]

The Trial Court told Hunter that he had no excuse saying he was immature at 25 and sentenced him to 20 years confinement in the Texas Department of Criminal Justice.[64]

Hunter filed a timely Motion for New Trial.[65] The Trial Court held a hearing, heard evidence, and denied the motion.[66] The details of the hearing will be discussed in the issue.

This appeal followed.

---

[59] R.R.II:72.
[60] R.R.II:85.
[61] R.R.II:79.
[62] R.R.II:74.
[63] R.R.II:74.
[64] R.R.II:92-94.
[65] C.R. 45.
[66] C.R. 52.

## ISSUE TWO

An ineffective assistance of counsel claim that renders a plea involuntary depends on (1) if counsel's advice was within the range of competence and, if not, (2) if there's a reasonable probability that, but for counsel's errors, the defendant wouldn't have pleaded guilty and would've insisted on a trial.

If the defendant was properly admonished, there is a *prima facie* showing that the guilty plea was made voluntarily.

How's Hunter's plea involuntary if the record shows he was admonished, he attested to his voluntariness, and his strategy was to avoid trial?

## ARGUMENT AND AUTHORITIES

Hunter claims he would've demanded a jury trial on the issue of guilt-innocence had he known that the best interest of the victim was a necessary finding by the Trial Court to place him on deferred probation.[67] The Trial Court said in its ruling that the issue of the specific finding making a difference in the outcome of the proceeding was not at all credible.[68] Although Hunter's Trial Counsel admitted that he didn't advise Hunter of the required finding, this didn't render his Trial Counsel ineffective or Hunter's plea involuntary in view of their trial strategy and all of Hunter's admissions and admonishments.

***Standard of review and applicable law***

---

[67] Hunter brief, p. 1.
[68] R.R.III:53.

9

When an ineffective assistance of counsel claim is brought in a motion for new trial, the appellate court reviews the trial court's denial of the motion for an abuse of discretion.[69] The appellate court reverses the trial court's motion for new trial only if the trial court's order "was clearly erroneous and arbitrary."[70] The evidence is reviewed in the light most favorable to the ruling and upheld if it is within the zone of reasonable disagreement.[71] Almost total deference must be shown to a Trial Court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor.[72]

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions.[73] Generally, to show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[74] Failure to make the required showing of either deficient performance or sufficient prejudice defeats the

---

[69] *Riley v. State,* 378 S.W.3d 453, 457 (Tex. Crim. App. 2012).
[70] *Id.*
[71] *Id.*; *Lopez v. State*, 428 S.W.3d 271, 278 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).
[72] *Riley*, 378 S.W.3d 453 at 458.
[73] See U.S. CONST. AMEND. VI.
[74] *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005).

ineffectiveness claim.[75]

"When a defendant challenges the voluntariness of a plea entered upon the advice of counsel, contending that his counsel was ineffective, 'the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[76]

Under either test, the defendant bears the burden to prove the elements by a preponderance of the evidence.[77] Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.[78] It is presumed that counsel's conduct falls within the wide range of reasonable professional assistance, and counsel's performance will be found deficient only if the conduct is so outrageous that no competent attorney would have engaged in it.[79]

---

[75] *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Andrews*, 159 S.W.3d at 101.

[76] *Ex parte Moody,* 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999) (quoting *Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)).

[77] *See Moody,* 991 S.W.2d at 858 (holding defendant's burden is same as other types of ineffective assistance of counsel claims); *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (holding defendant bears burden of proving by preponderance of evidence that counsel was ineffective).

[78] *Thompson,* 9 S.W.3d at 813.

[79] *Andrews,* 159 S.W.3d at 101; *Warren v. State*, 01-12-00649-CR, 2014 WL 1516540, at *3-4 (Tex. App.—Houston [1st Dist.] Apr. 17, 2014, no pet.) (not designated for publication).

The Court of Criminal Appeals stated that "[i]n making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight."[80]

*A voluntary plea*

It is well established that a guilty plea must be entered into knowingly and voluntarily.[81] The applicable standard of review is whether the plea is a voluntary and intelligent choice among the alternative courses of action open to the accused.[82] A record that indicates that the trial court properly admonished the defendant provides a *prima facie* showing that the guilty plea was made voluntarily and knowingly.[83] A defendant signing the admonishments, an attestation of voluntariness, at the original plea hearing imposes a heavy burden on him at a later hearing to show a lack of voluntariness.[84]

*Article 42.12 Section 5 (a) Deferred Adjudication; Community Supervision*

The Texas Code of Criminal Procedure reads:

---

[80] *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

[81] *See* TEX. CODE CRIM. PROC. art. 26.13(b); *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Ex parte Mable,* 443 S.W.3d 129, 131 (Tex. Crim. App. 2014).

[82] *McCarthy,* 394 U.S. at 466; *Mable,* 443 S.W.3d at 131.

[83] *Martinez v. State,* 981 S.W.2d 195, 197 (Tex. Crim. App. 1998).

[84] *Ford v. State*, 845 S.W.2d 315, 316 (Tex. App.—Houston [1st Dist.] 1992, no pet.); *see also Mallett v. State,* 65 S.W.3d 59, 64 (Tex. Crim. App. 2001).

> A judge may place on community supervision under this section a defendant charged with an offense under Section 21.11, 22.011, or 22.021, Penal Code, regardless of the age of the victim, or a defendant charged with a felony described by Section 13B(b) of this article, only if the judge makes a finding in open court that placing the defendant on community supervision is in the best interest of the victim. ***The failure of the judge to find that deferred adjudication is in the best interest of the victim is not grounds for the defendant to set aside the plea, deferred adjudication, or any subsequent conviction or sentence.***[85]

By a plain reading of the statute, whether or not the Trial Court found that deferred adjudication was in the best interest of the victim couldn't have been grounds for Hunter to set aside the plea.[86]

***Trial Court's ruling at sentencing: "There's no excuse just by saying you were immature."***

After hearing the evidence in Hunter's punishment hearing, the Trial Court gave it's ruling on the record:

> Now, Mr. Hunter, you committed a terrible crime, a horrible crime, not only once but by your testimony three, plus times. It was a huge mistake. It's a huge mistake for you, for this young lady, for her family, for your family. And I see her mother and father sitting on separate sides of the courtroom, and there's just a schism here.
>
> There's no way I can square a 25-year-old and a

---

[85] TEX. CRIM. PROC. CODE § art. 42.12(a) (emphasis added).
[86] *See id.*

nine-year-old and the testimony I've heard today in any way shape, fashion or form. You said you were immature.

In my generation, 50-some-odd thousand people died in South East Asia and a whole hell of a lot them were less than 25 years old. I was one of the fortunate ones, I guess, that didn't go over there. But I was in the Marines at that time. There's no excuse just by saying you were immature.

Everyone admits nobody can win and it looks like people are getting on with their life. But I agree with [the State] completely that part that young lady at the age of nine ceased to function, ceased to live, ceased to exist. And while there are no winners, there will be some justice.

So, it is the judgment of this Court, Mr. Hunter, that the Bailiff is to take you into custody. And the Sheriff is to turn you over to the appropriate authorities with the Texas Department of Criminal Justice to serve a sentence of 20 years.[87]

***Trial Court's ruling on the Motion for New Trial: "the fact of this specific finding not being discussed and making a difference to me is not at all credible."***

After hearing the evidence in Hunter's Motion for New Trial hearing, the Trial Court gave it's ruling on the record:

When we had the sentencing hearing, I am very confident the Defendant fully understood the full range of punishment.

---

[87] R.R.II:92-94.

Probation was argued for the fact of this specific finding not being discussed and making a difference to me is not at all credible. He simply made a bad choice. You can critique or second guess whatever Mr. Hernandez for hoping and thinking that on these facts I would show mercy or be kind and put him on deferred or some type of probation. In my mind, that was a bad call.

Looking back over the transcript and looking at what I said when I found you guilty and sentenced you, Mr. Hunter, again, there's no way you could square a 25-year-old and a 9-year-old, an aggravated sexual assault. You got up and testified you were immature and things of that nature. And I think I responded to that with a little bit of discussion about my history, and I didn't find that credible.

So, you simply chose a wrong goal here of getting probation. And based on those facts, there was absolutely no way in Heaven I was ever going to give you probation. So, the Motion for New Trial is denied.[88]

### *The Trial Court denied Hunter's Motion for New Trial because he didn't find Hunter's argument credible*

In its ruling, the Trial Court stated that the finding of in the best interest of the victim would not have made a difference in the outcome of the proceedings. The Trial Court told Hunter that he didn't find him credible. The Trial Court told Hunter that probation wasn't an option. The Trial Court's ruling should be upheld

---

[88] R.R.III:53.

15

because it's based, at least in part, on the Court's assessment of Hunter's credibility and demeanor.[89]

Moreover, the Trial Court's Motion for New Trial should be upheld by the plain meaning of the Article 42.12§5(a): "The failure of the judge to find that deferred adjudication is in the best interest of the victim is not grounds for the defendant to set aside the plea, deferred adjudication, or any subsequent conviction or sentence."[90] Whether or not the Trial Court found that deferred adjudication was in the best interest of the victim couldn't have been grounds for Hunter to set aside the plea.

### *Hunter wanted to avoid a trial and try to reunite his family*

Trial Counsel admitted that he didn't advise Hunter about the finding the Trial Court was required to make regarding the best interest of the victim in order to place a defendant on deferred probation.[91] Nonetheless, this lack of advice didn't render his Trial Counsel ineffective or Hunter's plea involuntary in view of their trial strategy and all of Hunter's admissions and admonishments.

---

[89] *See Riley,* 378 S.W.3d at 457.
[90] TEX. CRIM. PROC. CODE § art. 42.12(a).
[91] R.R.III:11; TEX. CRIM. PROC. CODE § art. 42.12(a).

Both Hunter and his Trial Counsel testified that they wanted to avoid a trial in order to spare the victim from going through a trial.[92] Hunter didn't want to have to put the victim through the trauma of a trial because the victim was a family member and she had gone on with her life.[93] Hunter testified at sentencing that he wanted to try to reunite the family.[94]

Hunter's strategy was to plea to the Trial Court and hope for deferred adjudication.[95] Hunter testified at the motion for new trial that he knew the family had rejected a plea to probation.[96] Hunter testified at the motion for new trial that he was aware that the victim's family was not going to support his request for probation.[97] Hunter testified that he thought the victim wanted him in prison.[98]

Hunter testified at the motion for new trial that his trial attorney told him that if they went to a trial by jury, that it wouldn't go well for him.[99] Hunter testified that his trial attorney told that if he completes the PSI, he would be able to receive probation, if everything goes well, and if the Court found mercy upon

---

[92] R.R.III:12-15, 37-38.
[93] R.R.III:12-15, 37-38.
[94] R.R.II:74.
[95] R.R.III:32-34.
[96] R.R.III:34.
[97] R.R.III:34.
[98] R.R.III:34.
[99] R.R.III:32.

him.[100] The record does not support Hunter's claim that he would've insisted on a jury trial for guilt-innocence.

### *Hunter cannot overcome the presumption that his plea was voluntary*

Prior to the plea, Trial Counsel advised Hunter about the full range of punishment.[101] Hunter testified that he understood the range of punishment at the time of his plea.[102] Hunter testified at sentencing that he accepted that he had pled guilty and would have to accept the Court's punishment.[103] He said he understood there was a possibility of prison.[104]

When Hunter entered his plea of guilty, he signed papers indicating that he understood the consequences of his plea after consulting with his attorney and that

---

[100] R.R.III:32-34; *see Chapa v. State*, 407 S.W.3d 428, 434 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (Court held that it was not ineffective assistance for a defense counsel to advise his client to plead guilty under the expectation that there would be a lighter sentence than what the client ultimately received.); s*ee also Graves v. State,* 803 S.W.2d 342, 345–47 (Tex. App.— Houston [14th Dist.] 1990, pet. ref'd); *see also Burnell v. State*, 01-10-00214-CR, 2012 WL 29200, at *7 (Tex. App.—Houston [1st Dist.] Jan. 5, 2012, pet. ref'd) (not designated for publication) (Even if defendant was told that the likelihood of community supervision was high in an open plea to the Trial Court, this Court cannot find this advice is below the range of competence of a reasonable defense attorney. If a defendant is eligible for community supervision, a trial counsel does not render ineffective assistance by advising him to plead guilty under the expectation that there will be a lighter sentence than what is ultimately received.).
[101] R.R.III:17-18.
[102] R.R.III:31-32.
[103] R.R.II: 81-82: "I accept that things that I have done and for the punishment that the Court puts on me today or whatever, I will have to accept it. I have pleaded guilty to this. I have not denied it. I'm ready to put it in the past and put this behind me and to press on in my life, to move forward. So, I have to accept anything that comes at me right now. I can understand it's a possibility that I can go to prison. But, yet, I haven't accepted it, no."
[104] R.R.II: 81-82.

he entered his plea knowingly and voluntarily.[105] The plea papers show that Hunter's attorney and the Trial Court verified that Hunter entered his plea voluntarily and knowingly.[106]

Hunter failed to show a lack of voluntariness in his plea due to his attestation of voluntariness at the original plea hearing.[107] In addition, Hunter's plea was voluntary in light of the testimony that Hunter wanted to avoid a trial in order to spare the victim from going through a trial.[108] There wasn't a reasonable probability or a believable probability that, but for Trial Counsel's errors, if any, Hunter wouldn't have pleaded guilty and would have insisted on going to trial.[109]

### Whichever way it's sliced – the outcome would've been the same

Even if Hunter's Trial Counsel's performance fell below an objective standard of reasonableness, Hunter hasn't proven that the proceeding would've been different.[110] In its ruling on the Motion for New Trial, the Trial Court said that Hunter's argument regarding a discussion of the required finding for deferred probation was not credible because asking the Trial Court for some type of

---

[105] *See State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) (When a person attacks the validity of his prior guilty plea as that plea is reflected in the written judgment, he bears the burden of defeating the normal presumption that recitals in the written judgment are correct. Those written recitals "are binding in the absence of direct proof of their falsity."); *see also Dusenberry v. State,* 915 S.W.2d 947, 949 (Tex App.—Houston [1st Dist.] 1996, pet. ref'd).
[106] *See Dusenberry,* 915 S.W.2d at 949; C.R. 25-26.
[107] *See id.; see also Ford,* 845 S.W.2d at 315.
[108] R.R.III:12-15, 37-38.
[109]*See Moody,* 991 S.W.2d at 857–58.
[110] *See Strickland*, 466 U.S. at 687-88.

19

probation was not a good choice.[111] In other words, testimony supporting the "in the best interest of the victim" finding wouldn't have made a difference in the outcome of the ruling.

The Trial Court heard Hunter testify at punishment and didn't find him credible:

- Hunter testified that he was very immature at the age of 25.[112]

- Hunter testified that he was young and he didn't know what he was thinking.[113]

- Hunter testified that he didn't realize the consequences of his actions at age 25.[114]

- Hunter testified that he wasn't sexually attracted to his cousin even though he raped her repeatedly.[115]

- Hunter testified that he didn't know why he repeatedly sexually assaulted his cousin.[116]

- Hunter testified that he would never do it again even though he didn't know why he did it the first time.[117]

---

[111] R.R.III:53.
[112] R.R.II:78.
[113] R.R.II:85.
[114] R.R.II:79.
[115] R.R.II:79.
[116] R.R.II:83-84.
[117] R.R.II:85.

- Hunter testified that he had not attended any classes or counseling to address the sexual abuse issues and that he had tried but didn't know what type of counseling he needed.[118]

Before the Trial Court sentenced Hunter, it said, "There's no way I can square a 25-year-old and a nine-year-old and the testimony I've heard today in any way shape, fashion or form. You said you were immature…There's no excuse just by saying you were immature."[119] The Trial Court compared Hunter to the fallen soldiers that had given their lives at ages younger than 25 years old. The Trial Court did not find Hunter's callow excuse credible.

The Trial Court didn't find Hunter credible at punishment when Hunter's excuse for raping a 9 year old little girl was his lack of maturity. The Trial Court didn't find Hunter credible at the subsequent hearing when Hunter's reason for his supposed involuntary plea was his trial counsel's erroneous advice. The Trial Court simply didn't find Hunter credible.

Hunter claims that if his Trial Counsel would have advised him differently about the required best interest of the victim finding, he wouldn't have pled guilty.[120] Even if this were credible and not the product of hindsight, Hunter's outcome still would not have been different. Hunter's Trial Counsel correctly

---

[118] R.R.II:79-80.
[119] R.R.II:92-94.
[120] R.R.III:35-36.

advised him that he probably wouldn't have received a better sentenced in front of a jury.[121] Even with the possible benefits of hindsight, Hunter has not shown that the outcome would've been different.

## *Conclusion: hindsight is a useless tool*

Despite Hunter testifying at the hearing on his motion for new trial, he simply did not rebut the presumption that Trial Counsel made all significant decisions in the exercise of reasonable professional judgment, and Hunter has not demonstrated in the record that Trial Counsel rendered ineffective assistance.[122] Hunter claimed that his allegedly ineffective assistance of Trial Counsel caused him to enter an involuntary plea of guilty. Considering the voluntariness of a guilty plea is determined by the totality of the circumstances and there is a presumption of regularity of the judgment and the proceedings, Hunter has not overcome this presumption.[123] During the hearing on the motion for new trial, Hunter testified he

---

[121] R.R.III:32; *Rodriguez v. State*, 01-14-00206-CR, 2015 WL 457463, at *1 (Tex. App.—Houston [1st Dist.] Feb. 3, 2015, no pet.) (A Harris County jury convicted defendant of the felony offense of aggravated sexual assault of a child and assessed his punishment at eighty years' confinement and a $10,000 fine.); *Parkinson v. State*, 01-14-00476-CR, 2015 WL 3637983, at *1 (Tex. App.—Houston [1st Dist.] June 11, 2015, no. pet. h.) (not designated for publication) (A Brazoria County jury found defendant guilty on four counts aggravated sexual assault of a child and assessed punishment at 45 years' confinement on each count.); and *Miranda v. State*, 14-14-00091-CR, 2015 WL 1870329, at *1 (Tex. App.—Houston [14th Dist.] Apr. 23, 2015, no. pet. h.) (not designated for publication) (A Harris County jury found appellant guilty of aggravated sexual assault of a child and the trial court sentenced appellant to twenty-five years' confinement.).

[122] *See Thompson,* 9 S.W.3d at 814.

[123] *See Dusenberry,* 915 S.W.2d at 949; *see also Fimberg v. State,* 922 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

22

was admonished by the Trial Court on the range of punishment and that he was aware that the Trial Court had no restrictions on punishment within that range.[124] Hunter failed to meet his burden in overcoming the presumption of regularity of the judgment and proceedings; therefore, his plea should be found voluntary.[125] Hunter's second issue should be overruled and the Trial Court affirmed.

---

[124] R.R.III:31-32.
[125] *See Barrett v. State*, 01-00-00763-CR, 2001 WL 1298867, at *2 (Tex. App.—Houston [1st Dist.] Oct. 25, 2001, no pet.) (not designated for publication).

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that the

judgment of the Trial Court be affirmed in all respects.

Respectfully submitted,

JACK ROADY
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY, TEXAS


*/s/* Allison Lindblade
ALLISON LINDBLADE
Assistant Criminal District Attorney
State Bar Number 24062850
600 59th Street, Suite 1001
Galveston, Texas 77551
Tel (409)766-2453/Fax (409)765-3261
allison.lindblade@co.galveston.tx.us

## CERTIFICATE OF SERVICE

The undersigned Attorney for the State certifies a copy of the foregoing brief was sent via email, eFile service, or certified mail, return receipt requested, to Joseph Kyle Verret, attorney for Hunter Marcell Hunter, at Kyle@verretlaw.com or 11200 Broadway, Suite 2743, Pearland, Texas 77584 on July 7, 2015.

*/s/* Allison Lindblade
ALLISON LINDBLADE
Assistant Criminal District Attorney
Galveston County, Texas

## CERTIFICATE OF COMPLIANCE

The undersigned Attorney for the State certifies this brief is computer generated, and consists of 5,163 words.

*/s/* Allison Lindblade
ALLISON LINDBLADE
Assistant Criminal District Attorney
Galveston County, Texas